**UNITED STATES, Appellee,**

v.

**Jeffrey A. BRADLEY, Sergeant First Class U.S. Army, Appellant.**

No. 59,437.

CM X000056.

U.S. Court of Military Appeals.

June 19, 1989.

For Appellant: *Captain Patricia D. White (argued); Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Captain James E. O'Hare, Captain Brian D. Bailey* (on brief); *Major Dale K. Marvin.*

For Appellee: *Captain Patrick D. O'Hare (argued); Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Gary L. Hausken* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer members sit-

ting at Fort Knox, Kentucky, during June and July 1986. Pursuant to his pleas, he was found guilty of violating a lawful general order by engaging in sexual intercourse and sodomy with a trainee's wife and committing indecent acts with a female Reserve Officer Training Corps cadet, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934, respectively. Contrary to his pleas, he was found guilty of rape, forcible sodomy, and extortion upon this same trainee's wife, in violation of Articles 120, 125, and 127, UCMJ, 10 USC §§ 920, 925, and 927, respectively. The members sentenced him to a dishonorable discharge, 24 years of confinement, total forfeitures, and reduction to E-1. The convening authority approved the sentence, but he reduced confinement to 8 years. The Court of Military Review affirmed the findings of guilty and the sentence in a memorandum opinion dated November 19, 1987.

This Court granted two issues for review in this case:

## I

WHETHER, AS A MATTER OF LAW, THERE WAS SUFFICIENT EVIDENCE OF FORCE AND LACK OF CONSENT TO SUPPORT FINDINGS OF GUILTY AS TO THE RAPE CHARGE.

## II

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY GIVING THE WRONG INSTRUCTION AS TO THE FORCE REQUIRED FOR RAPE AND FORCIBLE SODOMY.

We resolve both these questions in favor of the Government.

The parties to the trial stipulated to the basic facts surrounding the alleged offenses against the trainee's wife, as follows:

In April 1985, the accused was working as a drill sergeant in the company. At that time, the company was conducting basic training with a new group of train-

ees. One of the trainees assigned to the accused's platoon was Private (E-1) James North. Private North had just recently been married to his wife, Cynthia Diane North (who generally goes by the name Diane North). Mrs. North came to Fort Knox for the unit's Family Day on Saturday, 6 April 1985, and planned to stay in the area, moving into the Eubank Trailer Park in Radcliff, Kentucky, a town located just south of Fort Knox.

The accused first met Diane North when she came to the unit to visit, along with other wives and family members of the trainees, for Family Day on 6 April. The accused, Private North, Diane North and some other trainees and family members were in the accused's office and had a conversation for a short while.

Later on 6 April, Private North was granted permission to leave the unit area until Sunday afternoon, so that he could take his wife to Radcliff and help her move into the trailer. Private North and his wife left the post and went into Radcliff to the trailer, where Private North changed into civilian clothes. He then took his wife to a nearby car dealership to look at cars; on the way to the dealership Private North drove their car. While at the dealership Private North saw one of the other drill sergeants from the company. At that time, he became very concerned about being in trouble at the company, because he and the other trainees had been told that they were not allowed to wear civilian clothing or drive a vehicle during this phase of basic training. Private North told his wife about his concerns, and told her he hoped the drill sergeant had not seen him.

At about 1630 hours on Sunday, 7 April, Mrs. North took her husband back to the unit. She then returned to Radcliff to her trailer, where she had some cleaning and straightening up to do. While she was doing this, at about 1930 hours, the accused came to the trailer in his PT clothes. He brought with him a DA Form 2627-1, Record of Summarized Proceedings Under Article 15, UCMJ,

which the accused had himself filled out with written specifications, charging that Private North had violated lawful orders given to him to not drive a vehicle. The accused showed the form to Mrs. North while in her trailer, and told her that her husband was in serious trouble for breaking the rules. He also told her that she should not be living in the area while her husband was in basic training. The accused had not been authorized or directed by his commander or by any other superior to prepare an Article 15 to be administered to Private North.

Some time later, an act of sexual intercourse occurred between the accused and Mrs. North in the trailer. An act of oral sodomy (fellatio) also occurred, after the act of intercourse. The accused was married at the time these sexual acts occurred. He was fully aware that it was prohibited for any drill sergeant to engage in sexual relations or have any other social contact with family members of trainees, however he engaged in these acts anyway.

Prosecution Exhibit 2 (for identification) is the DA Form 2627–1 which the accused brought to Mrs. North's trailer. The accused tore it up prior to leaving the trailer.

The Court of Military Review commented on the granted issues in its opinion below:

Appellant's argument is that his trial defense counsel failed to investigate, prepare, present, and litigate the issue of lack of consent to the offense of rape. This allegation is based upon trial defense counsel's possible failure to take full advantage of the victim's testimony at a civilian trial of appellant, which resulted in a hung jury, on the rape and forcible sodomy charges. Counsel concentrated his attack on the absence of physical force by appellant during the confrontation. He did not disregard the issue of lack of consent. In view of appellant's despicable action in going to and securing entrance to the home of a trainee's wife, it was a sound trial tactic to concentrate on the more objective evidence rather than evidence based solely on appellant's credibility.

On the afternoon preceding the offenses, during Family Day activities, appellant had the victim play the rol[e] of a drill sergeant, emphasizing the absolute authority of the drill sergeant over a trainee. Late in the afternoon on the day of the offenses, he initiated Article 15, UCMJ, proceedings against the victim's husband, and entered the home that evening to discuss the trainee's misconduct with his wife, knowing her husband could not leave his unit area. Obviously, this gross breach of trust and professional responsibility would not impact on a civilian jury in assessing appellant's credibility. Further, a comparison of the civilian trial transcript and the record of trial shows marked similarities in the victim's testimony on the issue of lack of consent. *Both show she submitted to protect her husband;*[1] *both also show her fear of personal injury.* We find no deficiency or serious error in counsel's performance and therefore reject appellant's argument. *United States v. Scott,* 24 MJ 186 (CMA 1987). The court members heard the evidence that depicted the overpowering authority of appellant, the coercive environment he created, and observed the appellant's and victim's demeanors. They concluded that appellant's acts were sufficient to create a reasonable and genuine fear of grievous bodily harm[2] and that the victim did not consent to the intercourse. We find the evidence is sufficient to support their conclusions that the act of sexual intercourse was by force and without consent. *United States v. Hicks,* 24 MJ 3 (CMA 1987).

[1] Appellant's argument that the victim consented to intercourse *solely* to protect her husband is based on two pages of the 142 page transcript of the victim's testimony at the civilian trial, which includes fifty-three pages of cross examination.

[2] Appellant's contention that the trial judge's clarifying instruction was error is not well founded. The instruction tended to limit force to actual force, thereby

eliminating constructive or implied force that can be caused by psychological or emotional duress. Such limitation was more favorable to appellant than a correct instruction.

Unpub. op. at 1–2 (emphasis added.)

I

The first granted issue embraces several distinct, but nonetheless related, questions concerning appellant's rape conviction under Article 120. First, appellant asks what evidence showed that he used physical acts or express verbal threats to force Mrs. North to engage in sexual intercourse with him? *United States v. Hicks*, 24 MJ 3, 6 (CMA), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987); *see Barnett v. Commonwealth*, 216 Va. 200, 217 S.E.2d 828 (1975); *see generally* Estrich, *Rape*, 95 Yale L.J. 1087, 1105–11 (1986). Assuming there is none, he asks on what evidentiary basis could the members rationally conclude that he impliedly threatened her with bodily harm prior to engaging in this sexual act with her? *Id. See* Estrich, *supra* at 1115–17. Finally, assuming such force existed in either form, where was the evidence that the victim nevertheless did not consent to this conduct? *See United States v. Booker*, 25 MJ 114 (CMA 1987); *United States v. Short*, 4 USCMA 437, 441–42, 16 CMR 11, 15–16 (1954); *United States v. Henderson*, 4 USCMA 268, 272–73, 15 CMR 268, 272–73 (1954).

Turning to appellant's first question, we note the record shows that he applied very little physical force beyond that required to accomplish penetration. He did, however, physically place his hands on the victim's shirt after she removed his hands therefrom. *Cf. State v. Rusk*, 289 Md. 230, 424 A.2d 720, 728 (1981); Estrich, *supra* at 1114. Also, we observe that the record fails to show that appellant at any time expressly threatened the victim with death or bodily harm. Nevertheless, the court members were not limited to evidence of the direct application of force or express

demonstration of constructive force in determining whether appellant raped the victim. *See United States v. Hicks, supra. See also State v. Johnson*, 130 N.H. 578, 547 A.2d 213, 215–16 (N.H.1988); *State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673, 680 (1987).

The evidence presented in this case shows that the alleged victim was the youthful bride of a recent military recruit who himself was under the direct supervision of appellant, his drill instructor. *See United States v. Wilson*, 28 MJ 48, 50 (CMA 1989). We hold, as suggested by the Court of Military Review, that this military relationship with its ancillary implications for the dependent spouse created a unique situation of dominance and control where explicit threats and display of force by the military superior were not necessary. *See generally State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, 307 (1988); *State v. Etheridge, supra* 352 S.E.2d at 681. We also note that appellant confronted the victim at night in her secluded trailer when they both knew that her husband could not come to her defense. *See United States v. Williamson*, 24 MJ 32, 34 (CMA 1987). Moreover, there was evidence of an express threat by appellant to imprison her husband for 3 years unless the victim complied with his sexual demands. In this light, such an environment must be considered highly coercive. *See United States v. Hicks, supra.* In addition, appellant engaged in bizarre conduct, alternating a loud demanding voice with reasonable civilized conversation. *See People v. Barnes*, 42 Cal.3d 284, 228 Cal.Rptr. 228, 721 P.2d 110, 122–23 (1986). Moreover, employing language indicating his power and control, he directly exploited his imposing status as a drill instructor. Finally, he repeatedly ignored Mrs. North's pleaful entreaties to desist in his sexual demands and made clear his determination to accomplish his salacious ends. This is sufficient evidence of an implied threat of death or bodily harm to meet the requirements of Article 120.[1] *United States v. Hicks, supra. Cf.*

---

1. An inference might be drawn from the evi-

dence of record that appellant's histrionics were

*United States v. Booker,* 25 MJ 114 (CMA 1987); *People v. Jeff,* 204 Cal.App.3d 309, 251 Cal.Rptr. 135, 146–47 (5th Dist.1988).

Turning to the lack-of-consent issue, we find that there is ample evidence that Mrs. North expressly communicated her refusal to engage in sexual activity to appellant on numerous occasions that evening. She particularly rejected the proposed deal of sex for favorable treatment for her husband. She further communicated her sincerity in this refusal by breaking down in tears and begging appellant to desist in his sexual demands. She also engaged in some physical resistance by removing appellant's hands from her shirt and person. Finally, the victim explained that additional physical resistance on her part was limited because she believed it would be useless and her efforts would be overcome. *See United States v. Short, supra,* citing *Mills v. United States,* 164 U.S. 644, 647–48, 17 S.Ct. 210, 210–11, 41 L.Ed.2d 584 (1897). This is sufficient evidence from which the members could conclude beyond a reasonable doubt that the victim did not consent to the charged act of rape. *See* para. 45c (1)(b), Part IV, Manual for Courts–Martial, United States, 1984.[2] *See also People v. Barnes, supra* 228 Cal. Rptr. at 240–42, 721 P.2d at 122–23.

## II

The second granted issue asks whether the military judge's additional instruction on the force required for rape and forcible sodomy[3] was erroneous. In particular, appellant notes that a member's question prior to deliberations demonstrated the court's confusion on this vital element of these offenses. He asserts that the military judge's response to the member's question failed to cure this problem.

The military judge initially informed the members that "[t]he act of sexual intercourse in rape and the act of sodomy in the charge of forcible sodomy must have been done by force and without the victim's consent." Colonel Izzard, the inquiring member, later asked, "Would you clarify so we understand it, the interpretation of the word 'force'; whether it is physical, mental, emotional—any one of those, or what?" The military judge responded, with concurrence of both counsel:

> MJ: Members of the court, with respect to force—the force required for this offense must have been applied to the victim at the time of the sexual intercourse or immediately preceding it, and it must either overcome the resistance of the victim, or put the victim in a position where she makes no resistance.
>
> Are there any further questions?
>
> (Negative response from members of the court).
>
> MJ: Apparently not. Court is closed.

We recognize that the military judge's response deals expressly with the timing and quantity of force required for conviction of rape and forcible sodomy. Moreover, we

limited to the exploitation of his ability to harm the victim's husband. However, we are required to view this evidence in the light most favorable to the Government, and, accordingly, we construe his conduct more broadly. *See United States v. Hart,* 25 MJ 143, 147 (CMA 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988).

**2.** The prosecution cannot convict a person of rape simply on the basis that the victim genuinely believed resistance would be futile. *Cf.* para. 45c (1)(b), Part IV, Manual for Courts–Martial, United States, 1984. Additionally, it must show the conduct of the accused and other circumstances which would lead a reasonable person to reach the same conclusion. Such an honest and reasonable belief by the victim elim-inates the requirement of showing physical force beyond that required for penetration. *See United States v. Hicks,* 24 MJ 3 (CMA), *cert. denied,* 484 U.S. 95, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987). It does not eliminate the requirement of showing the express or implied use of constructive force in the first instance. *See People v. Leonhardt,* 173 Ill.App.3d 314, 123 Ill.Dec. 99, 103–104, 527 N.E.2d 562, 566–67 (Ill.App.1988); *see generally* Estrich, *Rape,* 95 Yale L.J. 1087, 1114 (1986).

**3.** Additional evidence was admitted at this trial that appellant made statements to the victim concerning his ability to kill her without the need for weapons. These statements were allegedly made after the act of sexual intercourse but before the act of sodomy.

agree that it might be construed to suggest that only physical force will suffice.

However, the challenged instruction was not the only instruction concerning force given by the judge. Earlier instructions spoke in particular terms of the fear of death or bodily injury.[4] We also note that defense counsel at trial had ample opportunity to object to these previous instructions on force or attempt to clarify them. While he did successfully object to an instruction offered by trial counsel,[5] he accepted those proposed by the judge. In addition, he had ample opportunity to provide input on Colonel Izzard's question and proffered no objection to the proposed response by the judge.[6] In our opinion, the judge's response, viewed in the context of his earlier instructions, reasonably suggests that physical force or the threat thereof was required to convict appellant of these offenses. Accordingly, no prejudicial error occurred in this case. Art. 59(a), UCMJ, 10 USC § 859(a). *See United States v. Salley,* 9 MJ 189, 193 (CMA 1980); *United States v. Slubowski,* 7 MJ 461, 466 (CMA 1979).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

4. The judge instructed: "Consent, however, may not be inferred if resistance would have been useless, or where her resistance was overcome by a reasonable fear of death or great bodily harm. You should consider all the surrounding circumstances in deciding whether Diane North consented. If Diane North submitted to the act of sexual intercourse because resistance would have been useless, or if she consented to the act of sodomy because resistance would have been useless or because of a reasonable fear of death or great bodily harm, then the acts were done by force and without her consent."

*See* DA Pamphlet 27–9, Military Judges' Benchbook 3–89 (Feb.1985).

5. "You should consider all of the surrounding circumstances in deciding whether the victim consented. If you find the victim submitted to sexual intercourse because resistance would have been useless, or because of a reasonable fear of death or great bodily harm, or *because of extortion or threats against the victim or her husband,* then the act was done by force and without consent."

6. Some jurisdictions have gone as far as holding that threats against persons other than the victim are sufficient force or compulsion for a conviction of rape. *See Commonwealth v. Mlinarich,* 518 Pa. 247, 542 A.2d 1335, 1342 (1988); *State v. Dee,* 752 S.W.2d 942, 945–46 (Mo.App. 1988); *Fitzpatrick v. State,* 93 Nev. 21, 558 P.2d 630, 631 (Nev.1977). *See generally* W. Winthrop, *Military Law and Precedents* 678 (2d ed. 1920 Reprint). Defense counsel did not request that the members be instructed that such a threat was not sufficient as a matter of military law. He did, however, make a motion for a finding of not guilty on this basis, which was denied by the military judge without explanation.