UNITED STATES, Appellee,

v.

James L. WATSON, Captain, U.S. Air Force, Appellant.

No. 61,588.
ACM 26882.

U.S. Court of Military Appeals.

Argued Dec. 12, 1989.

Decided Sept. 10, 1990.

■■■■■■■■■■■■■■■■■■■■

For Appellant: *Captain Mark R. Land* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Major Terry M. Petrie* (argued); *Colonel Joe R. Lamport* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Appellant was charged with rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. A military judge sitting alone as a general court-martial acquitted him of rape, but convicted him, contrary to his pleas, of committing an indecent assault, in violation of Article 134, UCMJ, 10 USC § 934. The judge sentenced him to dismissal and total forfeitures. The convening authority approved the sentence as adjudged. The Court of Military Review, in an unpublished opinion, limited the forfeitures to $1,798.00 but otherwise affirmed the findings and sentence.

We granted review of these issues:

I

WHETHER THE MILITARY JUDGE'S FINDINGS WERE FATALLY INCONSISTENT WHEN HE ACQUITTED APPELLANT OF RAPE BUT CONVICTED HIM OF AN INDECENT ASSAULT BY TOUCHING THE BREASTS AND VAGINA, AND ENGAGING IN SEXUAL INTERCOURSE WITH THE VICTIM.

II

WHETHER APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS AND STATUTORY RIGHT TO EQUAL ACCESS TO EVIDENCE, UNDER ARTICLE 46, UCMJ, WAS VIOLATED WHEN THE PROSECUTION FAILED TO DISCLOSE TO THE DEFENSE THAT THE VICTIM HAD FILED A CLAIM AGAINST THE GOVERNMENT FOR $5,000.

We will treat the issues separately.

I

A

Appellant is an officer in the United States Air Force. At the time of the incident leading to the charged offense, he was stationed at San Miguel Naval Air Station (NAS), Republic of the Philippines, and he resided in Air Force barracks at the station. Liza, the prosecutrix in this case, was employed at the barracks as a domestic servant. Cleaning appellant's room and caring for his laundry were part of her regular duties.

On February 12, 1987, Liza entered appellant's room sometime after 1:00 p.m. According to her version of the facts, she entered the room with the purpose of cleaning it; she started in appellant's bathroom because he was in the kitchen. Because she appeared sleepy, appellant suggested she "take a nap with" him. She rejected the suggestion.

According to Liza, appellant then pushed her onto the bed and laid on top of her. She asked him to let her go, but he refused. Instead, he held her arms above her head with one hand and fondled her breasts and "private parts" with the other hand. She tried kicking and repeatedly told appellant to stop. Nevertheless, he persisted and ultimately penetrated her vagina with his penis.

Appellant on the other hand contended that the entire episode culminating in intercourse was consensual. In his testimony, he admitted fondling her breasts and vagina, and penetrating her vagina with his penis. He testified that, throughout the foreplay, she did not complain. However, after intercourse began, he noticed she was crying, and she said he was hurting her; so he discontinued the intercourse. According to appellant, his belief that she was consenting was based on his observation of her conduct in the barracks and on information he had received from fellow service-

members to the effect that she was promiscuous and open to advances.

Shortly after the episode, another barracks maid discovered Liza, crying and shaking, in the barracks washroom. To her colleague, Liza related that she had been "raped"; her friend talked her into reporting it to her supervisor, which she did at approximately 1:45 p.m.

After a full trial on the merits, the military judge found appellant

> Guilty; excepting the words, "rape ... [Liza]" and substituting therefor the words, "commit an indecent assault upon ... [Liza], a person not your wife, *by touching her breasts and vagina, and by engaging in sexual intercourse with her* with the intent to gratify your sexual desires."

(Emphasis added.)

### B

As to the first issue, appellant contends that a not-guilty finding of rape is inconsistent with a finding of guilty to indecent assault by, *inter alia*, engaging in sexual intercourse with her at the same time and place. Strictly speaking, this argument addresses only the sexual-intercourse language of the indecent-assault specification. Thus, even if appellant were correct, he could still be guilty of indecently assaulting the prosecutrix by fondling her. *See Unit-*

ed States v. Wilson, 13 MJ 247, 252 (CMA 1982) (Everett, C.J., dissenting).

Appellant is correct in observing that the assault component of both indecent assault and rape requires proof beyond a reasonable doubt that the victim did not consent to the act. *See United States v. Wilson, supra* at 251.[1] From this, he argues that the not-guilty finding of rape constituted a finding by the judge that the act of sexual intercourse was consensual, and he urges us to reverse his conviction because this same consensual act of sexual intercourse cannot logically or legally serve as a factual basis for his conviction of indecent assault.[2] Appellant's argument, though superficially appealing, fails in fact and law for several reasons.

On the instant record, it does not require much speculation to divine the military judge's thinking. *See* Appendix. First, however, it is necessary to review what constitutes rape. Article 120 provides that

> [a]ny person subject to this chapter who commits an act of sexual intercourse with a female not his wife, by force and without her consent, is guilty of rape....

The Manual, in turn, sets out the elements as follows:

> (a) That the accused committed an act of sexual intercourse with a certain female;

---

1. Unlike *United States v. Wilson*, 13 MJ 247 (CMA 1982), the military judge here made a specific finding on the indecent assault. *See* text, *supra*.

2. In *United States v. Perry*, 22 MJ 669 (ACMR 1986), upon which appellant relies heavily, the military judge, sitting as the trier of fact,

> acquitted ... [Perry] of rape but found him guilty of committing an assault by kissing the face and breast of the victim, unbuttoning and pulling down her pants, and placing his penis into her vagina.

The Court of Military Review, "[d]eclining to speculate as to the precise nature of the trial judge's findings," remanded the case to the judge for an explanation. The judge answered in part:

> 1. The court was not convinced beyond a reasonable doubt that ... the victim did not consent to the act of intercourse, in as much as *she did not manifest her lack of consent to*

*the degree required in rape cases,* to wit: that she did what she was able, under the circumstances, to prevent the act of intercourse.
> 2. The court was convinced beyond a reasonable doubt that (in addition to the other elements necessary) [the victim] did not consent to the lesser included offense of indecent assault.

22 MJ at 670 (emphasis added by CMR).

As noted by the ACMR, Perry was convicted of the lesser offense of assault and battery, Art. 128, UCMJ, 10 USC § 928, not indecent assault, Art. 134. The Court of Military Review was understandably confused by the finding that lack of consent to intercourse was not proven as to rape but was proven as to assault.

While we cannot account, in the instant case, for the military judge's view of the essential elements of rape, *see* text, *supra*, there is no indication of *Perry*-like inconsistency here.

(b) That the female was not the accused's wife; and

(c) That the act of sexual intercourse was done by force and without her consent.

Para. 45b(1), Part IV, Manual, *supra.*

Furthermore, by way of *"[e]xplanation,"* the Manual states:

Force and lack of consent are necessary to the offense. Thus, if the female consents to the act, it is not rape. *The lack of consent required, however, is more than mere lack of acquiescence. If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent.* Consent, however, may not be inferred if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the female is unable to resist because of the lack of mental or physical faculties. In such a case there is no consent and the force involved in penetration will suffice. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm. . . .

Para. 45c(1)(b) (emphasis added).

The standard military instruction on rape, after listing the elements of the offense, contains substantially the same explanation. Para. 3–89b, DA Pam 27–9, Military Judge's Benchbook at 3–181 (Change 1, 1985).

The military judge seemed to read the language emphasized above in the explanation as establishing an additional, independent requirement—or element—that the victim must manifest her lack of consent in some positive manner. At the same time, however, the judge acknowledged the complete defense to rape and all included offenses of reasonable and honest mistake of fact as to the victim's lack of consent.[3] Over and over, in the colloquy with counsel during argument on findings, the judge sounded these themes. *See* Appendix. It is obvious the judge believed—even if he was satisfied beyond a reasonable doubt that the victim did not consent, and even if he was satisfied beyond a reasonable doubt that appellant was not reasonably and honestly mistaken as to her lack of consent[4] that there was still some additional affirmative duty or requirement that the victim must perform before a charge of rape could be made out. Further, it is evident that the judge was not satisfied that this affirmative duty was performed here.

It is equally clear, on the other hand, that the judge believed that this affirmative duty was not required or inherent in the lesser-included offenses. *See* Appendix. Thus, in the judge's view, so long as he was satisfied beyond a reasonable doubt that the victim did not consent to appellant's sexual advances, including intercourse, and so long as he was satisfied beyond a reasonable doubt that appellant was not reasonably and honestly mistaken as to the victim's lack of consent,[5] it was possible to find appellant guilty of one of the lesser-included offenses of rape, notwithstanding the victim's failure to perform this additional duty supposedly inherent in rape cases.

It is bewildering, admittedly, how the military judge could seemingly have found such an independent, affirmative duty on the part of a rape victim. The explanation given in the Manual—mere commentary at that—in no way suggests such an independent duty. Obviously, where there is no manifestation of lack of consent, an inference *may* be drawn that the victim consent-

---

3. *See United States v. Baran,* 22 MJ 265, 267 (CMA 1986); *United States v. Carr,* 18 MJ 297 (CMA 1984); *United States v. Wilson,* 13 MJ 247, 251 (CMA 1982); *United States v. Short,* 4 USCMA 437, 16 CMR 11 (1954).

4. *See* RCM 916(b), Manual for Courts–Martial, United States, 1984.

5. *See* n. 3, *supra.*

ed, or a reasonable inference *may* be raised that the accused was reasonably and honestly mistaken as to consent. But if there *is* no reasonable doubt of lack of consent and no reasonable doubt as to whether the accused was reasonably and honestly mistaken thereto, then the lack-of-consent aspect of rape has been satisfied *just as it has with all the lesser-included offenses.*

The possibility that, under the evidence, the military judge might also have found appellant guilty of the greater offense, rape, does not preclude a finding of guilty of the lesser offense, indecent assault, for

inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984); *see also United States v. Lyon*, 15 USCMA 307, 313, 35 CMR 279, 285 (1965) ("court-martial may merely have given the accused 'a break' "). Thus, we reject the theory that acquittal of a greater offense requires acquittal of a lesser offense where what is claimed to be the only contested element in the greater offense is also present in the lesser offense.[6]

Ultimately, the test for appellate review of such findings is the same as any other: whether there is "some legal and competent evidence from which a court-martial may find or infer beyond a reasonable doubt those facts required by law for conviction." *United States v. Harper*, 22 MJ 157, 161 (CMA 1986); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In that regard, the elements of proof of indecent assault under Article 134 are as follows:

(1) That the accused *assaulted* a certain person not the spouse of the accused in a certain manner;

(2) That the acts were done with the intent to gratify the lust or sexual desires of the accused; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 63b, Part IV, Manual, *supra* (emphasis added).

"Assault consummated by a battery" has these elements:

(1) That the accused did *bodily harm* to a certain person; and

(2) That the bodily harm was done with unlawful force or violence.

Para. 54b(2), Part IV, Manual, *supra* (emphasis added). "Bodily harm" is defined as *"any offensive touching* of another, however slight." Para. 54c(1)(a) (emphasis added).

■ Accordingly, the question is whether there is competent evidence of record that, if believed beyond a reasonable doubt by the trier of fact, supports a conviction of indecent assault. The simple answer is that, if appellant touched the victim's breasts and vagina, and engaged in sexual intercourse with the victim without her consent and with intent to gratify his sexual desires, sufficient proof of an indecent assault has been made out. The record is replete with such evidence.

For purposes of this appeal, we will treat this ruling of the military judge as error—either the result of judicial lenity, confusion, or misunderstanding of the evidence or law. As to the greater charge of rape, the effect of the judge's interpretation could only have provided appellant a windfall. As to the lesser offense of indecent

---

**6.** Of course, this case presents a scenario quite different from *United States v. Cartwright*, 13 MJ 174 (CMA 1982), where we concluded, as a matter of statutory construction, that an ac-

cused could not be convicted of aiding and abetting a larceny and knowingly receiving the same property.

assault, the record shows that the ruling had no bearing whatever on the findings of guilty. Therefore, since this conviction is otherwise supported by the evidence of record, we must affirm. Art. 59(a), UCMJ, 10 USC § 859(a).

## II

### A

With the assistance of a civilian attorney, charges against appellant were initially filed with Philippine authorities. Some months later, after August 13, 1987, Liza was taken by trial counsel to see the claims officer at the Office of the Staff Judge Advocate for the purpose of filing a claim under the Foreign Claims Act, 10 USC § 2734. The staff judge advocate wanted to maximize the military's stake in the matter in order to convince Philippine authorities that U.S. Forces should exercise jurisdiction over appellant, not them. Furthermore, the staff judge advocate believed Liza "had a valid claim." She was given the forms to file a claim but did not do so at that time.

On September 3, 1987, appellant's defense counsel served a continuing discovery request on trial counsel asking for all "handwritten, typed or recorded statements by" government witnesses and "[a]ny known ... evidence of ... bias bearing on ... [their] credibility." On September 14, 1987, the Government replied, indicating that all witness statements had been provided and that no evidence of witness bias was known.

Eventually, on October 13, 1987, Liza filed a claim against the U.S. Government in the amount of $5,000. The fact of this filing was not communicated to trial or defense counsel prior to commencement of trial in the case.

Court-martial hearings began on February 16, 1988. Late in the afternoon of February 18, while the military judge was deliberating on findings, trial counsel first learned that the claim had been filed. He immediately notified defense counsel. Al-

most simultaneously, the military judge returned with his findings.

After announcing his findings, the judge recessed the court-martial until the following morning. At that next session, defense counsel requested and received a 5-day delay "based on some newly provided information that had come to my attention shortly before you entered with findings." Of course, this newly discovered information was the fact that Liza had filed a claim for monetary damages. When trial resumed on February 24, the defense moved to dismiss the proceedings on a due process theory that the Government had failed to disclose the claim pursuant to the discovery request. After considering counsels' excellent briefs and the testimony of several witnesses, including additional testimony from the victim, the military judge denied the motion. The result was that appellant remained guilty of the lesser-included offense of indecent assault but not guilty of rape. *See* paras. 45d(1)(c) and 63b, Part IV, Manual for Courts–Martial, United States, 1984.

### B

■ Turning to the second granted issue, it is clear that failure to disclose exculpatory evidence prior to trial violates an accused's right to a fair trial. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Eshalomi,* 23 MJ 12 (CMA 1986). The same rule applies to impeachment evidence. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To rise to a violation of due process, however, the withheld evidence must be material; and

> evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Impeachment evidence that the Government's chief witness had a monetary inter-

est in the outcome of the trial, and thus a motive to lie, can obviously be material evidence at a criminal trial. *United States v. Bagley, supra* at 676, 105 S.Ct. at 3380; Mil.R.Evid. 608(c), Manual, *supra.*

 However, appellant is entitled to relief only if the undisclosed information casts reasonable doubt on the validity of the proceedings. *United States v. Eshalomi, supra* at 22. The military judge was the adjudicator of the motion as well as the trier of fact. His essential findings of fact and his rulings of law demonstrate full appreciation of the task he faced upon learning of the newly discovered evidence. His findings are supported by the evidence and are correct in law; they will not be disturbed on appeal.

The decision of the United States Air Force Court of Military Review is affirmed.

EVERETT, C.J., and SULLIVAN, J., concur.

## APPENDIX

MJ: [To TC] Let me ask you a question, counselor. You know the law [of rape] on this, as well as I do. And the law is that lack of consent is required; but this is more than mere lack or [sic] of acquiescence, and if the woman fails to make the lack of consent reasonably known, by taking such measures of resistance as called for by the circumstances, then the inference might be drawn that she did consent.

\* \* \* \* \* \*

MJ: Defense Counsel, I don't mean to interrupt, but as you go through you prompt the same questions I addressed to the trial counsel, where do you think that leaves you with a lesser included offense. For example, if one were to find that there was not a reasonably known and reasonably communicated resistance, a lack of making it reasonably known, then that would kick the rape specification.

DC: Yes, sir.

MJ: But then you are left with all the LIOs, are you not? Then you shift to the next level which is your first LIO which is

assault with intent to rape. Obviously you've got arguments that that's not there, then you go down to the next level which would be the indecent assault, and from there you would shift away from the manifestation element which you had in rape to the second level of your presentation, which is *honest and reasonable mistake, which would be a good defense to every LIO.*

DC: Yes, sir.

MJ: *Do you think there could be a situation arise in which the manifestation wouldn't be there, but you could fall to the LIOs existing, depending on whether or not one believes the honest and reasonable mistake in fact in this case.* Could that occur?

[DC answered in the negative.]

\* \* \* \* \* \*

MJ: [To TC] *If there is no manifestation sufficient under the circumstances to trigger the rule on rape, if you don't do enough there, can you still have a non-consensual activity that has to fall somewhere below, depending on whether or not the defense [of mistake of fact] is there.* Do you think that's possible?

TC: Yes, your Honor, I agree.

MJ: What would you think it was?

TC: It would run the entire range of the LIOs, in that case.

\* \* \* \* \* \*

MJ: [To DC] You see, the question I was posing was the question that he came to, and that is if the manifestation requirement only exists in the allegation of rape, that's the only place that exists. Could one determine that the manifestation of resistance or non-consent didn't occur, and even though every other fact would essentially be the same, wouldn't one fall to the LIOs, or doesn't that theoretical possibility exist? *And then don't you turn then again to the same defense, which would be a good defense against all of it, of the two-prong defense of honest and reasonable [mistake of fact].*

DC: Yes, sir.

\* \* \* \* \* \*

MJ: [To TC] Well, look what is says, read the instruction: "If a woman fails to make the lack of consent reasonably known by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent." *Now that's a special instruction, I don't see that required anywhere else except in rape. That doesn't apply in any other offense you see in there where there is an affirmative duty of manifestation under the circumstances.*

\* \* \* \* \* \*

MJ: Let's get just as careful as we can here so that we do exactly right. *But the instructions on rape say that it's more than lack of acquiescence is needed for rape.* Now in the other offenses, as far as I know, lack of acquiescence I believe, is all that's required. *Now, an honest and reasonable mistake or belief as to acquiescence is a lock shot defense to all of that, no question about it. But lack of acquiescence alone will stand on the LIOs, which is of course overcome as a defense by the honest and reasonable belief.* I think that's right. It says more, read the instruction, *it says: "here something additional is required for rape."*

(Emphasis added.)