UNITED STATES, Appellee,

v.

Sergeant Boyce A. FRYE, Jr., 251–19–2119, United States Army, Appellant.

ACMR 8901030.

U.S. Army Court of Military Review.

14 Jan. 1992.

---

For Appellant: Colonel Robert B. Kirby, JAGC, Lieutenant Colonel James H. Weise, JAGC, Captain Alan M. Boyd, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before De GIULIO, HAESSIG and ARKOW, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

De GIULIO, Senior Judge:

In March 1989, a general court-martial found appellant guilty of rape, assault with a dangerous weapon, and two specifications of impersonating a CID agent, in violation of Articles 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, and 934 (1982) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for 18 months, total forfeitures, and reduction to Private E1. This Court set aside the findings and

sentence because the military judge improperly denied appellant's timely motion to withdraw his request to be tried by enlisted members so he could be tried by officers. Government counsel conceded error. A rehearing was authorized. *United States v. Frye*, ACMR 8901030 (A.C.M.R. 23 Aug. 1990) (unpub).

At the rehearing by a court with enlisted members, contrary to his pleas, appellant was found not guilty of rape, but guilty of the lesser included offense of indecent assault, and was found guilty of two specifications of impersonating a CID agent. He was sentenced to a bad-conduct discharge, confinement for three years, forfeiture of $300.00 pay per month for three years, and reduction to Private E1.[1] The convening authority reduced the confinement to eighteen months, but otherwise approved the sentence. The case is again before us for review.

We affirm the findings but hold that the military judge erroneously advised the court of the maximum sentence. We will reassess the sentence.

The victim, Private First Class (PFC) P, had completed a sentence at the Army Correction Brigade arising from a conviction for possession and distribution of drugs, conspiracy, and adultery. PFC P had been restored to duty. She met appellant one week after her reassignment to the Uniformed Services University of Health Sciences. During their conversations, she told him of her conviction. Although appellant was married, he "asked her out" five or six times. She initially told him that she was not interested but eventually agreed to have dinner with him when he told her he must talk to her about his severe marital problems. When setting up the meeting where they would talk, appellant mentioned that his friend had left a film case containing cocaine in his car. While driving to dinner appellant told PFC P that he was high on cocaine. He offered to exchange cocaine for sex. She refused. He then

1. We note that the court adjudged and the convening authority approved a forfeiture which stated the length of forfeiture in years rather than months, contrary to Manual for Courts-Martial, United States, 1984, Rule of Courts-Martial 1003(b)(2) [hereinafter R.C.M.]. *See United States v. Perry*, 24 M.J. 557 (A.C.M.R.), *petition denied*, 24 M.J. 444 (C.M.A.1987).

offered to sell her the cocaine for ten dollars. When she indicated that she would buy it, appellant produced a badge, stated that he was CID, exhibited a pistol in his waistband and told her he would have to process her "because she had accepted to buy cocaine." He also turned his head and acted as if he was talking into a tape recorder. Eventually, appellant offered not to arrest her if she would have sex with him. She agreed and they went to her barracks. When appellant tried to "massage" her, PFC P exhibited her reluctance by pushing him away from her. Again, appellant threatened sex or arrest. She chose sex, and they had intercourse. A few days later appellant asked PFC P to meet him in the library where, acting as a CID agent, he attempted to get to her to sign a CID incident report concerning her attempt to purchase cocaine. He produced an envelope which contained a cassette tape and CID forms. She indicated she wanted a lawyer and left. The next day appellant sent her a letter apologizing for "taking her through hell" and indicating he would not turn her in. Two days later, PFC P told her boyfriend of the incident. He reported the matter to the CID. A search of appellant's work area resulted in the discovery of an envelope upon which was written PFC P's name, which contained a cassette tape and a CID report. The CID report had PFC P listed as the subject, and contained information indicating the report was for her buying cocaine from Agent Sergeant Boyce Frye. A laboratory report concluded appellant's signature was on the envelope and CID reports. Evidence of record shows appellant was neither a CID agent nor did he work for them.

The theory of the defense was that this was a drug deal that went sour—an exchange of drugs for sex. Appellant contended that, when PFC P discovered she was not getting cocaine from appellant after they had sex, she alleged rape. Appellant maintained that PFC P's testimony was not worthy of belief.[2]

Before this Court, appellant alleges that, with respect to the rape charge, the military judge erred to his prejudice by instructing the court on the lesser included offense of indecent assault. Over defense objection,[3] the military judge determined that indecent assault was raised by the evidence.[4] Although he noted that consent was a central issue in the case, he decided to give the instruction stating, "I believe the jury could find, if they don't find sufficient force to overcome the consent, indecent assault." It is apparent that the court members were concerned over the force required as it related to consent because they asked three times for instructions concerning this issue and the distinction between rape and the offense of indecent assault. After hearing all the evidence the court members found appellant, "Guilty, except for the word 'rape,' substituting therefor the words, 'commit an assault upon Private First Class [P], a person not his wife, by placing his tongue in her vagina and having sexual intercourse with her, with intent to gratify his sexual desires.'"[5] The court found appellant not guilty of sodomy.

I.

Appellant asserts that the military judge erred to his substantial prejudice by instructing the court members that they could consider indecent assault as a lesser included offense of rape. He contends that the only issue raised was consent, and that if PFC P consented to the intercourse, as the court must have believed, she also con-

2. The defense theory ignores the "CID Reports" found in appellant's work area.

3. A considerable portion of government counsel's brief argues that appellant waived any error by not objecting to the instruction given by the military judge. We are at a loss as to how counsel concluded waiver because trial defense counsel specifically objected to the proposed instruction several times. The objection was

not waived. *See United States v. Langley,* 33 M.J. 278, 280 n. 3 (C.M.A.1991).

4. Trial counsel disagreed also but contended an instruction on assault consummated by a battery should be given.

5. Appellant was also found guilty of the two specifications of impersonating a CID agent.

**1078**

sented to the acts involved in the indecent assault.

 It is well settled that a military judge must instruct the court members, sua sponte, on all lesser included offenses reasonably raised by the evidence; this duty arises whenever some evidence is presented to which the fact finders might attach credit if they so desire. *United States v. Jackson*, 12 M.J. 163 (C.M.A.1981); *United States v. Clark*, 48 C.M.R. 83 (C.M.A.1973); *United States v. Evans*, 38 C.M.R. 36 (C.M.A.1967). The military judge has this duty even if counsel oppose instructions on the lesser included offenses. *See United States v. Emmons*, 31 M.J. 108 (C.M.A.1990).

In the case before us, the military judge instructed the court that consent obtained by fraud is valid consent, and he properly left this issue for the court to determine. We believe this case is akin to those cases where purported consent was obtained by threat of disciplinary action, rather than by fraud.[6] In *United States v. Hicks*, 24 M.J. 3 (C.M.A.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987), the threat was by a sergeant to report a purported violation of a regulation by the victim's boyfriend. He offered not to report the violation in exchange for sex. The court held that the force used could be actual or constructive and that the existence of reasonableness of the victim's fear of bodily harm under the totality of the circumstances, to include the circumstances in which she was placed, and her age, size, and mental condition, were questions of fact. It was held that the evidence was sufficient to support the determination that sexual intercourse was accomplished by force and without her consent. *Id.* at 6.

In *United States v. Bradley*, 28 M.J. 197 (C.M.A.1989), a drill sergeant obtained sex from a trainee's wife by threatening that her husband, a trainee, would be imprisoned for three years for infractions. The court noted that little physical force was applied to the victim beyond that needed to accomplish penetration and that the victim was not threatened with bodily harm. The court members were not limited to evidence of the direct application of force or an express demonstration of constructive force. It was held that there was sufficient evidence that the victim had not consented to sexual intercourse. *Id.* at 201.

In the case before us, PFC P had expressed her refusal to have sex with appellant by refusing to trade sex for cocaine. She had been convicted and imprisoned for distribution of drugs. She was fearful of going to jail and losing her second chance. She was also fearful of the weapon appellant displayed to her. At her barracks, she removed appellant's hands from her when he was "massaging her." She only succumbed to appellant when he again gave her the ultimatum that she had thirty seconds to decide to give him sex or he would arrest her. Appellant obtained sexual intercourse through this threat. As in *Hicks* and *Bradley*, the evidence is sufficient to show the victim had not consented to sexual intercourse. Having determined that consent and resistance manifested by the victim were key issues in the case, the military judge properly instructed the court on the lesser included offense of indecent assault.

 The military judge confused the court by instructing that lack of consent for rape is usually manifested by resistance. He further instructed that this requirement is not necessary for indecent assault. His instructions appear to establish some affirmative duty on the part of the victim to resist rape while there was no affirmative and independent duty to resist for indecent assault. There is no independent affirmative duty to resist on the part of a victim. *United States v. Watson*, 31 M.J. 49, 52–53 (C.M.A.1990). An inference that the victim consented, however, may be drawn from lack of resistance. *Id.* In rejecting the theory that an acquittal of the greater offense requires an acquittal of a lesser offense where only the contested element is present in both offenses, the Court of Military Appeals has stated that:

---

6. *See United States v. Booker*, 25 M.J. 114 (C.M.A.1987) (a misrepresentation of the act performed or some aspect of identity can support a charge of rape).

inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Watson,* 31 M.J. at 53 (citing *United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 476–77, 83 L.Ed.2d 461 (1984)).

We believe that principle applies here. As in *Watson,* if it is believed that appellant placed his tongue in PFC P's vagina and had sexual intercourse with her without her consent and with intent to gratify his sexual desires, the evidence is legally sufficient for a finding of guilty of indecent assault. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have examined the evidence and find it factually sufficient for a finding of guilty of indecent assault. *See* UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). Any error in the instruction by the military judge on this issue was to the benefit of appellant. *See Watson,* 31 M.J. at 53–54.

## II.

■ Appellant alleges that the military judge failed to limit the maximum sentence to the sentence approved at his original court-martial.

Although appellant's approved sentence at his original court-martial was dishonorable discharge, confinement for eighteen months, total forfeitures, and reduction to Private E1, the military judge instructed the court members that the maximum punishment was dishonorable discharge, confinement for six years, total forfeitures, and reduction to Private E1.

Article 63, UCMJ, 10 U.S.C. § 863 provides in pertinent part,

Upon a rehearing the accused may not be tried for any offense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence may be imposed, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory.

Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 810(d)(1) [hereinafter R.C.M.] also provides, "[O]ffenses on which a rehearing ... has been ordered shall not be the basis for punishment in excess of or more severe than the legal sentence adjudged at the previous trial ..., as ultimately reduced by the convening or higher authority...." The discussion to this provision states that, "The members should not be advised of the basis for the sentence limitation under this rule." Government appellate counsel contends that, because of the statement in the discussion, by implication, the court should be instructed that the maximum sentence is that set forth in the table of maximum punishments. He contends that it permits the members to arrive at an appropriate sentence. We find this interpretation erroneous. The court should have been instructed that the maximum penalty was dishonorable discharge, confinement for eighteen months, total forfeitures, and reduction to Private E1. *See* R.C.M. 810(d)(1). *See also United States v. Eschmann,* 28 C.M.R. 288 (C.M.A.1959). The maximum sentence on a rehearing is limited to the punishment approved by the convening authority after the original trial. *United States v. Jones,* 28 C.M.R. 98 (C.M.A.1959). The members should not be informed of the reasons for the maximum punishment because "[t]he members of the Court are concerned only with the maximum imposable sentence and not the basis for the limitation it places upon them." *Id.* at 99–100. We will correct this error by reassessing the sentence.

The allegations of error raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed. Reassessing the sentence based upon the entire record, the error

noted, and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), only so much of the sentence is affirmed as provides for a bad-conduct discharge, confinement for nine months, forfeiture of $300.00 pay per month for nine months and reduction to Private E1.

Judge HAESSIG and Judge ARKOW concur.