**UNITED STATES, Appellee**

v.

**Jerry D. WEBSTER, Machinery Technician Second Class, U.S. Coast Guard, Appellant.**

No. 93–1076.
CMR No. 996.

U.S. Court of Military Appeals.

Argued June 2, 1994.

Decided Sept. 19, 1994.

For Appellant: *Commander Wayne C. Raabe* (argued).

For Appellee: *Lieutenant Garland M. Walker* (argued); *Lieutenant Commander Charles J. Bennardini.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

From April 27 to May 1, 1992, appellant was tried by a special court-martial composed of officer members at Portsmouth, Virginia. Contrary to his pleas, he was found guilty of violating a lawful general regulation (4 specifications); rape; assault and battery (2 specifications); indecent assault (3 specifications); and communicating indecent language (2 specifications), in violation of Articles 92, 120, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 920, 928, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $500.00 pay per month for 2 months, and reduction to the lowest enlisted grade. On July 4, 1992, the convening authority approved the sentence. On May 18, 1993, the Court of Military Review dismissed the four specifications of violating a lawful general regulation but affirmed the remaining findings of guilty and the sentence. 37 MJ 670, 682.

On December 14, 1993, this Court granted review of the following issue:

> WHETHER THE EVIDENCE WAS LE-GALLY SUFFICIENT TO PROVE BE-YOND A REASONABLE DOUBT THAT THE ACT OF INTERCOURSE WAS DONE BY FORCE AND WITHOUT THE CONSENT OF THE ALLEGED VICTIM.

We hold that there was "some legal and competent evidence" presented in this case from which the court-martial could "find or infer beyond a reasonable doubt" all the essential elements of rape as defined in the Uniform Code of Military Justice.[1] *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Harper,* 22 MJ 157 (CMA 1986).

The facts necessary to disposition of the granted issue are set forth in the opinion of the court below. 37 MJ at 671–72. In addition, the following testimony by the victim, Petty Officer T, is relevant to the determination of legal sufficiency:

BY TRIAL COUNSEL:

Q. Petty Officer [T], with regard to your being on the floor, how did you come to be on the floor in the vicinity of your bedroom door?

A. Jerry did pull me down on the floor.

Q. And after that particular incident, what happened?

A. Like I said, I thought he was going to leave. I asked him to leave, and he said he was going to leave. Once we got to the kitchen, he was standing there by the door.

He kept walking toward me and backed me up against the counter. He had his arms—his hands on my arms—and just kind of backed me up against the counter.

Q. Both of his hands on your arms?

A. Yes.

Q. And where were your hands located at that point in time?

A. I don't know if they were back up against the counter. I don't know where they were. I don't remember.

Q. Did you say anything to him at this point?

A. I don't know; I don't remember.

Q. Did he say anything to you?

A. I don't remember.

Q. What happened when you were backed up against the counter?

A. He must have pulled my shorts down. He put his fingers inside of me. He put my bathing suit to the side and put himself inside me.

Q. Now when you say he put his fingers inside you, do you mean that he put his fingers inside your vagina?

A. Yes.

Q. Did you say anything to him as this was taking place?

A. I was telling him "no."

Q. How many times did you say that?

A. Quite a few.

Q. How many times would you say quite a few is?

A. Probably four or five.

\* \* \*

Q. Where were you at exactly when he inserted his penis inside you?

A. Up against the counter.

Q. Were you sitting against the counter or on top of the counter?

A. I think I was on top of the counter.

Q. Do you recall how you got on top of the counter?

A. No, I do not.

Q. Do you recall whether or not you could move while you were up against the counter?

A. He was up against me, and he had his arms up against me.

1. Appellant was found guilty of rape as defined as "an act of sexual intercourse with a female not his wife, by force and without her consent[.]" Art. 120(a), UCMJ, 10 USC § 920(a)(1951). *See also United States v. Clark,* 35 MJ 432, 434 (CMA 1992) (paragraph 45b(1), Part IV, Manual for Courts–Martial, United States, 1984, sets forth these elements), *cert. denied,* — U.S. —, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993). Appellant only challenges the evidence as to the element of "by force and without her consent." Subsequent to appellant's court-martial, Article 120(a) was amended by the deletion of the words "with a female not his wife" and "her" before "consent." National Defense Authorization Act, Pub.L. No. 102–484, Div A, Title X, Subtitle G, § 1066(c), 106 Stat. 2506 (1992).

Q. When you say up against you, did he have his chest up against your chest?

A. I just—I remember him holding on to me. I couldn't move.

Q. Were you physically prevented from moving?

A. I don't know.

Q. Were you mentally incapable of moving at that point in time?

A. I don't know. I don't remember. I just sat there.

Q. Did Petty Officer Webster's conduct come as a surprise to you on this particular occasion?

A. Yes, it did.

\*       \*       \*

Q. Did Petty Officer Webster use force to engage in sexual intercourse with you on that occasion?

A. I was up against the counter and I really couldn't go anywhere.

Q. Was his body physically pressed against yours?

A. I don't know. I just couldn't move.

Q. You recall that you couldn't move on that particular occasion?

A. (Nods head affirmative[ly].)

Q. Did you believe that you could resist Petty Officer Webster's sexual advances on this occasion?

A. I don't understand.

Q. That you were able to fend off the sexual intercourse from happening.

A. I just sat there and didn't do anything.

Q. Did you think you could do something to get away from it?

A. I don't know how. That thought never came to my mind. I mean, there's no way to do anything.

Before this Court, appellant argues that the evidence in his case was legally insufficient to prove beyond a reasonable doubt that he engaged in sexual intercourse with Petty Officer T, "with force and without her consent." His principal contention is that the prosecution's failure to prove that Petty Officer T resisted his advances was fatal to its case for the offense of rape. Final Brief at 5.

— — —

In *United States v. Bonano–Torres*, 31 MJ 175, 179 (CMA 1990), this Court expressly declined to adopt "an inflexible rule establishing resistance as a necessary element of" rape. *Accord People v. Bermudez*, 157 Cal. App.3d 619, 624, 203 Cal.Rptr. 728, 731 (1984) ("The law has outgrown the resistance concept[.]"), *quoted in People v. Iniguez*, 7 Cal.4th 847, 30 Cal.Rptr.2d 258, 264, 872 P.2d 1183, 1189 (1994). Instead, we looked to the "totality of the circumstances evidenced in [the] record," 31 MJ at 179, in order to determine whether the evidence was legally sufficient to prove *the element of force*. *Accord People v. Young*, 190 Cal.App.3d 248, 256, 235 Cal.Rptr. 361, 365 (1987)("Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case[.]" (citing *People v. Bermudez, supra* )). Furthermore, the level of force need only be "more than the incidental force involved in penetration[.]" *United States v. Bonano–Torres, supra.*

In *United States v. Watson*, 31 MJ 49 (1990), this Court similarly held that proof of a "manifestation of lack of consent" does not require "some positive" action or response by the victim. *Id.* at 52. Judge Cox, writing for a unanimous Court, rejected the notion that the rape victim has "an independent, affirmative duty" to resist an attacker in order to prove the element of lack of consent. *Id.* at 52. Moreover, this Court long ago held that lack of consent, as well as the appropriate level or measure of resistance by the victim, is determined by the "totality of the circumstances." *United States v. Henderson*, 4 USCMA 268, 273, 15 CMR 268, 273 (1954).

Accordingly, the specific question before us is whether the record contains competent evidence that 1) appellant used "more than the incidental force involved in penetration," and 2) Petty Officer T manifested a lack of

consent to sexual intercourse with appellant. Regarding the use of force, the testimony of Petty Officer T is evidence that appellant used actual physical force. *Cf. United States v. Williamson*, 24 MJ 32, 33 (CMA 1987). She testified that he restrained her by grabbing her arms, lifted her on the kitchen counter, and prevented her from moving. All this occurred while Petty Officer T repeatedly insisted that appellant leave her apartment and said "no" to appellant's sexual advances and ultimate penile penetration.

In terms of consent, or lack thereof, appellant acknowledges that "Petty Officer [T] verbally rejected" appellant's requests for sexual intercourse. Final Brief at 6. *Cf. United States v. Bradley*, 28 MJ 197, 201 (CMA 1989). Furthermore, during argument on the defense motion for a finding of not guilty, defense counsel acknowledged that "[t]here are statements by the victim to the effect she said 'no' on several occasions." Moreover, Petty Officer T testified that she said "no" to appellant "[p]robably four of five" times prior to and during sexual intercourse. Viewing the evidence in the light most favorable to the Government, *United States v. Clark*, 35 MJ 432, 433 (CMA 1992), we conclude that the members could reasonably have found or inferred beyond a reasonable doubt the element of lack of consent.

Assuming, *arguendo*, that proof of resistance by the victim is required to establish the elements of force and lack of consent, we find such proof in this case.[2] The evidence in the record shows that from the moment appellant asked Petty Officer T to go to the bedroom, she verbally rejected his sexual advances. She refused to go to the bedroom; she refused to go into the closet; and she asked appellant to leave when he pulled her down to the living room floor. She further testified that appellant agreed to leave, yet he unexpectedly backed her into the kitchen and against the counter. Having secured this physical advantage, appellant then removed Petty Officer T's shorts, moved her bikini to the side, and inserted his fingers and then his penis in her vagina, despite being told "no" four or five times by Petty Officer T. *See* 37 MJ at 672. Such evidence of unwavering and repeated verbal protest in the context of a surprise immobilization surely could be considered reasonable resistance under the circumstances of this case.[3] *Cf. People v. Schmidt*, 885 P.2d 312 (Colo.App. 1994). *But cf. Commonwealth v. Berkowitz*, 415 Pa.Super. 505, 609 A.2d 1338, 1347 (1992) ("no" is not alone sufficient to prove use of actual force), *aff'd in part*, 641 A.2d 1161 (Pa.1994); *Goldberg v. State*, 41 Md.App. 58, 395 A.2d 1213, 1219 (1979) ("the resistance that must be shown involves not merely verbal but *physical* resistance").

The decision of the United States Coast Guard Court of Military Review is affirmed.

Judges GIERKE and WISS concur.

---

2. The force and lack of consent required for the offense of rape are commonly measured in terms of the victim's resistance. *See generally* Estrich, *Rape*, 95 YALE L.J. 1087, 1105–21 (1986) (cases cited therein) (the inquiry into consent and force are virtually identical, both of which are defined in terms of the victim's resistance; " 'forcible compulsion' becomes the force necessary to overcome reasonable resistance," *id.* at 1107).

3. The military judge instructed the members on the elements of force and lack of consent as follows:

The act of sexual intercourse must have been by force and without the victim's consent. The lack of consent required, however, is more than mere lack of acquiescence. *If a woman fails to make the lack of consent reasonably known by* taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent. Consent, however, *may not be inferred if resistance would have been useless, or where her resistance was overcome by a reasonable fear of death or great bodily harm.* You should consider all of the surrounding circumstances in deciding whether the victim consented. *If the victim submitted to the act of sexual intercourse because resistance would have [sic] useless, because of reasonable fear of death or great bodily harm, or because she was unable to resist due to mental or physical inability, then the act was done by force and without her consent.* (Emphasis added.) This instruction is almost identical to the definition provided in paragraph 45c(1)(b), Part IV. Neither at trial nor during appeal did appellant challenge the adequacy of this instruction.

COX, Judge, with whom CRAWFORD, Judge, joins (concurring in part and in the result):

In case I misread the majority, I write to clarify my views. *Nothing* in Article 120(a), Uniform Code of Military Justice, 10 USC § 920(a), suggests or implies that *any* measure of resistance is required of a rape victim. The offense of rape was defined until October 24, 1992, as follows:

> Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife, *by force and without her consent,* is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

(Emphasis added.) *See* 40 MJ at 385 n. 1. *See also United States v. Watson,* 31 MJ 49, 52–53 (CMA 1990).

Naturally, as the Manual for Courts–Martial, United States, 1984, points out, a failure to resist where resistance might be expected *might* give rise to an *inference* that the prosecutrix actually consented. Para. 45c(1)(b), Part IV. However, that is an entirely different proposition from *requiring* physical resistance to an assailant before rape occurs.

There is also nothing in Article 120(a) which suggests or implies any requirement that the perpetrator use force *beyond* that "incidental force involved in penetration." 40 MJ at 386. To be sure, the Manual specifies that, where resistance "would have been futile, ... the force involved in penetration will suffice." Para. 45c(1)(b). However, the Manual does not claim the reverse—that in other circumstances, *more* than the force involved in penetration would be required. Even if the Manual could be read as bearing such an implication, it would be inconsistent with the statute and hence a nullity.

At the same time, if no more force was employed than that incidentally involved in penetration, it would be the same as if no resistance was offered—it *might* give rise to an inference of consent under certain circumstances. That, however, is not the same as a separate *requirement* of more force than that necessary for penetration.

With these exceptions, I concur in the majority opinion and in the result.