UNITED STATES, Appellee,

v.

Sergeant Jessie T. SCOTT, Jr.,
139–64–0108, United States
Army, Appellant.

ACMR 9202111.

U.S. Army Court of Military Review.

26 July 1994.

Reconsideration Denied 28 July 1994.

For Appellant: Major Fran W. Walterhouse, JAGC, Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC, Captain Jane F. Polcen, JAGC (on brief).

Before, WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

The principal question before us is whether the appellant should be exonerated of involuntary manslaughter and two assaults with a dangerous weapon on grounds either of self-defense or defense of another.[1] The court members heard and observed the witnesses, evaluated their credibility, determined that the defenses were inapplicable, and found the appellant guilty of the enumerated offenses. Notwithstanding their determination, we, in the exercise of our fact-finding power under Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), find the court's findings factually incorrect.

### I. Facts

The evidence of record unequivocally establishes that, while attending a festival in Bremerhaven, Germany, on the evening of 18 May 1992, the appellant fired a nine-millimeter pistol into a group of young men of Turkish descent, wounding three of them, one fatally. The appellant's actions may have been spawned by another incident that had occurred at the festival the previous evening. At that time, a Turkish youth shot a friend of the appellant in the face with a gas pellet pistol. On the evening of the 18th, the appellant and three of his friends decided to attend the festival knowing there was a possibility they might again be confronted by

---

1. On 26 September 1992, the appellant was convicted, contrary to his pleas, by a general court-martial composed of officer and enlisted members, of involuntary manslaughter, assault with a dangerous weapon (two specifications), and wrongfully carrying a concealed weapon in violation of Articles 118, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 918, 928, and 934 (1988) [hereinafter UCMJ]. He was sentenced to confinement for twenty-four months, forfeiture of all pay and allowances, and reduction to Private E1. On 19 January 1993, the convening authority approved the sentence. On 5 August 1993, the incarcerating authority suspended the unexecuted confinement for ten months and, on 23 August 1993, remitted the unexecuted forfeitures effective 5 August 1993.

Turkish youths hostile to American soldiers. When the friend who had been shot warned him about the Turks, the appellant said he was not concerned because he was carrying "a nine"—meaning a nine-millimeter pistol.

About thirty minutes after entering the festival grounds, the appellant and his friends were confronted by a group of about ten to fifteen Turkish youths. The Turks began taunting the appellant and the other soldiers with obscene words and gestures, and the soldiers reciprocated.[2] When one of the antagonists, possibly one of the soldiers, said, "Four of you against four of us," the two groups left the festival grounds intent on engaging in a fist fight. However, the scenario did not play out as the soldiers expected it would.

According to the soldiers, when they left the festival grounds, more individuals joined the Turkish youths and, as their numbers increased, they became more aggressive and belligerent. One of them retrieved some empty bottles from a trash container, broke them, and began advancing on the soldiers. Another brandished a switchblade knife. Others threw bottles at the soldiers and shot at them with gas pellet guns. As the crowd continued to grow, the soldiers retreated but the Turks continued to advance upon them. The appellant, believing he was about to be surrounded, pulled his pistol from a leather purse and fired three shots into the air to warn them away. Apparently, this did not deter the Turks as they continued to pursue the soldiers who, by now, were hastening their retreat. As he was running away, the appellant pointed his pistol at the crowd and fired three more shots. This time he wounded three people.

Two of the Turkish youths told a different story. They testified that the soldiers initiated the confrontation and when they responded to their invitation to fight, the appellant pulled out a pistol and shot them without provocation. They denied throwing bottles at the soldiers or intending to assault them other than with their fists. They claimed that the soldiers threw bottles at them. Ac-

cording to the Turks, the large crowd that followed the soldiers only wanted to observe the impending fight, not menace the soldiers.

The appellant gave a sworn statement to military criminal investigators in which he admitted shooting into the crowd, but that he did so to protect himself and his friends from the hostile mob. He told how he and his friends were first confronted by ten to fifteen Turkish youths and that they exchanged insults. He related that, after one of his friends made the offer to fight the Turks "four on four," they all left the festival grounds to engage in the fray. However, when the group of Turks swelled in size, the soldiers decided to break off the engagement. He described the crowd that followed as threatening and that he feared for his safety. He claimed that he "heard small pop sounds that reminded [him] of a .22 or maybe a .25 caliber pistol." He claimed to have seen a Turkish youth "standing with both his arms extended in front of his chest, hands together, like in a handgun shooting stance." He thought the Turk was aiming a pistol at him. As he was running away from the crowd, he fired "three rounds into the crowd, with my weapon in my right hand, pointed behind me as I ran away."

The soldiers' version of the incident was corroborated by neutral witnesses. They testified that the Turkish youths were hostile, armed with sticks, knives, gas pellet guns, and out-numbered the soldiers by as few as twenty to as many as two hundred to four. Several witnesses testified that, before the appellant fired his pistol, the soldiers were attempting to disengage themselves from the confrontation but were unsuccessful because the Turks continued to advance upon them. These witnesses also said that they saw or believed they saw the Turks shoot gas pellet pistols at the soldiers before the appellant shot at them. One witness said that when the appellant shot three rounds into the air it did not deter the Turks but only incited them to "storm" the soldiers. An American officer at the festival observed a group of Turkish youths beating an "African"

2. The three gestures mentioned in the record included the familiar use of the middle finger, crossing the throat with the index finger, and pointing the index finger and thumb to simulate the shooting of a pistol.

prior to the incident. He believed they were looking for trouble and implied that they may also have been hostile to the appellant and his friends because of their African heritage. Subsequent to the incident, police investigators found three spent cartridges from a gas pellet gun at the scene.

## II. Legal Principles and Analysis

The test for factual sufficiency of a finding of guilty is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of the appellant's guilt beyond a reasonable doubt. UCMJ, art. 66(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Where defenses are raised by the evidence, the prosecution must also prove beyond a reasonable doubt that any defenses so raised do not exist. *United States v. Berri*, 33 M.J. 337 (C.M.A.1991); Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 916(b) and (e) [hereinafter R.C.M.].

In homicide cases and assault cases, the defense of self-defense is available to an accused who uses deadly force where the accused reasonably apprehends that death or grievous bodily harm is about to be inflicted wrongfully upon him by a certain antagonist and subjectively believes that the force used by him is necessary for protection against death or grievous bodily harm from that antagonist. R.C.M. 916(e)(1). These principles of self-defense are also applicable when an accused claims the defense of defense of another. However, an additional element of the defense requires that "the accused may not use more force than the person defended was lawfully entitled to use under the circumstances." R.C.M. 916(e)(5).

We find that the prosecution failed to prove beyond a reasonable doubt that the appellant was not acting in self-defense and in defense of his companions when he fired his pistol into the crowd. To the contrary, the evidence supports the appellant's argument, that he and his friends were accosted by about ten to fifteen Turkish youths bent on insulting and harassing them; that, although they first displayed a willingness to engage in fisticuffs with the Turks, they retreated from this bravado when they realized the weakness and foolishness of their situation; that the Turks, whose number had substantially increased, attempted to cut off the soldiers' escape route and displayed and used weapons (sticks, bottles, knives, gas pellet guns) in an aggressive manner against them; that the appellant fired three shots into the air to deter the Turks from pursuing him and his friends; and that, when that failed and the Turks rushed at the soldiers, the appellant fired three shots into the crowd as he and his friends were fleeing.

We conclude that the appellant reasonably perceived a threat of imminent death or grievous bodily harm from the Turks and that his actions in defending himself and his friends were subjectively reasonable under the circumstances. Although the court members saw and heard the witnesses, this is not a case that turns entirely on the credibility of witnesses with divergent biases or observations of the incident. There is sufficient corroborating evidence from impartial witnesses as well as tangible evidence (the spent cartridge cases from a gas pellet gun) to support the appellant's version of the incident. Accordingly, we will set aside the findings of guilty of the involuntary manslaughter and aggravated assault charges.

## III.

The appellant also alleges that he was victimized by the failure of the office of the staff judge advocate to comply with two of the Manual's post-trial notification requirements. Specifically, he claims that he was not served with the record of trial as required by R.C.M. 1104(b)(1)(A) nor with the staff judge advocate's recommendation to the convening authority as required by R.C.M. 1106(f)(1). The appellant points to the absence of certificates of service in the allied papers as demonstrating that such service was not accomplished.[3] He prays that

---

**3.** The record contains a certificate of service reflecting that the appellant was belatedly served with the record of trial on 4 February 1993. The post-trial recommendation of the staff judge advocate, dated 10 December 1992, states, "This recommendation has been served on the defense counsel and the accused." However, there is no "certificate of service" to confirm that statement.

we set aside the convening authority's action, return the record to The Judge Advocate General for a new review and action, or, alternatively, grant sentence relief. We decline to grant any such relief.

The appellant is entitled to personal service of a copy of the record of trial as soon as it is authenticated. R.C.M. 1104(b)(1)(A). However, one exception to this requirement permits service of the record on the trial defense counsel "if the accused so requests on the record at the court-martial or in writing" and if a statement from the trial counsel explaining why the accused was not personally served is attached to the record. R.C.M. 1104(b)(1)(C). This exception is present in the instant case. Appellate Exhibit LII to the record of trial reflects that the appellant was advised of his post-trial and appellate rights and indicated that he desired that his copy of the record of trial be served on his civilian trial defense counsel. While the record contains no certificate of service to evidence that the record of trial was served on the appellant's counsel, the latter's signature on the last page of the record sufficiently demonstrates that in fact such service was accomplished. Moreover, while the record contains no statement from the trial counsel explaining why the accused was not personally served, the reason appears evident from Appellate Exhibit LII.

Rule for Court–Martial 1106(f)(1) provides for service of the staff judge advocate's recommendation on the accused but the procedure is somewhat different than that for service of the record of trial. "The method of service and the form of the proof of service are not prescribed and may be by any appropriate means. *See* R.C.M. 1103(b)(3)(G)." R.C.M. 1106(f)(1) discussion. Furthermore,

This service on the accused is in addition to the service of the recommendation upon the defense counsel for the accused. Service upon the accused is not required if service is impractical because of circumstances such as military necessity and the accused being transferred to a distant place. R.C.M. 1106(f)(1). If it is not practical to serve the accused, the accused's copy shall be forwarded to the defense

counsel. *Id.* When the accused is not served, a statement shall be included in the record explaining why the accused was not personally served. *Id.* When the record does not demonstrate service upon the accused, this court has accorded the staff judge advocate a presumption that he or she has properly performed these duties in the absence of evidence to the contrary. [*United States v.*] *Cook,* 31 M.J. [745] at 746 [ (A.C.M.R. 1990) ].

*United States v. Jackson,* 36 M.J. 757, 758 (A.C.M.R.1993); *accord United States v. Roland,* 31 M.J. 747 (A.C.M.R.1990).

We are satisfied that service of the staff judge advocate's recommendation on the appellant was accomplished in accordance with the rule. The comment of the staff judge advocate in the recommendation itself coupled with the appellant's failure to challenge the statement by post-trial affidavit, more than sufficiently rebuts the appellant's naked allegation that he was not served with the recommendation.

■ Furthermore, at the time the staff judge advocate's recommendation was prepared, the appellant was in confinement at Fort Sill, Oklahoma, while his trial defense counsel was in Germany. The appellant's trial defense counsel was served with the recommendation and successfully obtained a delay in responding to it in order to obtain matters for submission to the convening authority. Subsequently, he telephoned the senior defense counsel at Fort Sill who notified the appellant that his counsel had called to request clemency matters for submission to the convening authority. However, the appellant failed to return the call or provide his counsel with the necessary information. Instead, he told the senior defense counsel that he had not yet received his copy of the record of trial and therefore was unable to furnish the information.

In an undated letter written by the appellant to the convening authority, and admitted as an appellate exhibit before this court, he states,

At one point sir I was not going to ask for any clemency. After receiving my record of trial and finding that the convening

authority never gave me the opportunity to ask if I wanted it or not, because of what rights I do have where (sic) violated, I now feel I should ask.

When the appellant failed to furnish his defense counsel with information for submission to the convening authority, the latter informed the convening authority he would not be submitting matters on appellant's behalf. In Appellate Exhibit LII, referred to above, the appellant acknowledged understanding his right to submit post-trial matters in his own behalf to the convening authority and that either he or his counsel could submit such matters upon either or both of them being served with the staff judge advocate's recommendation.

Even if the evidence did not demonstrate that appellant was properly served with the recommendation, we would hold that service of the post-trial recommendation on the defense counsel satisfies the spirit and purpose of R.C.M. 1106(f)(1). *See United States v. Roland,* 31 M.J. at 749. The appellant was notified by his defense counsel of the necessity to timely provide him with information to submit to the convening authority. This suggests that the appellant should have known that his counsel had been served with the staff judge advocate's recommendation and was attempting to submit matters in response thereto. In the context of this case, the appellant's claimed reason for failing to submit such matters (to await receipt of the record of trial) is not a legitimate one as he had previously requested his copy of the record be served on his trial defense counsel.

IV.

█ In conjunction with the foregoing assignment of error, the appellant has alleged that his trial defense counsel was ineffective in failing to insure that certain clemency matters were submitted to the convening authority. During this appeal, the appellant proffered and we admitted letters and statements from individuals vouching for his high moral character, superb duty performance, and rehabilitative potential. He argues that, but for his counsel's negligence, the conven-

ing authority would have learned of these matters prior to his taking action and that a more favorable result would have ensued. While it is true that failure to properly represent an accused during post-trial proceedings may constitute ineffective representation, *United States v. Stephenson,* 33 M.J. 79 (C.M.A.1991), we hold that the appellant's counsel was not ineffective here. The evidence of record demonstrates that the letters and statements were not submitted because appellant, by his own admission, had not originally intended to do so. However, after he received his copy of the record of trial subsequent to the lapse of the time period for submission of clemency matters, he changed his mind. We decline to find the trial defense counsel at fault for this omission. Moreover, after examining the substance of the statements, we are satisfied that the appellant was not prejudiced by the convening authority not having seen them. *See United States v. Dumas,* 36 M.J. 941 (A.C.M.R.1993).

We have considered the other errors assigned by the appellant including those raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty of Charges I and II and their Specifications are set aside and Charges I and II and their Specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted above and the entire record, the court affirms only so much of the sentence as provides for confinement for six months, forfeiture of all pay and allowances for six months, and reduction to Private E1.

Judge LANE and Judge RUSSELL concur.