UNITED STATES, Appellee

v.

Jessie T. SCOTT, Jr., Sergeant
U.S. Army, Appellant.

No. 94–1289.
CMR No. 9202111.

U.S. Court of Appeals for
the Armed Forces.

Argued May 31, 1995.

Decided Sept. 21, 1995.

For Appellant: *Major Roy H. Hewitt* (argued); *Colonel Stephen D. Smith* and *Lieutenant Colonel John T. Rucker* (on brief); *Major Fran W. Walterhouse* and *Captain Theresa L. Norris.*

For Appellee: *Captain John W. O'Brien* (argued); *Colonel John M. Smith, Major Lyle D. Jentzer,* and *Captain Randy V. Cargill (USAR)* (on brief); *Captain James P. Baiamonte (USAR).*

Opinion of the Court

SULLIVAN, Chief Judge:

1. In August and September 1992, appellant was tried by a general court-martial composed of officer and enlisted members at Bremerhaven, Germany. Contrary to his pleas, he was found guilty of involuntary manslaughter, assault with a dangerous weapon (2 specifications), and carrying a concealed weapon, in violation of Articles 119,[1] 128(b)(2), and 134, Uniform Code of Military Justice, 10 USC §§ 919, 928(b)(2), and 934, respectively. The members sentenced appellant to confinement for 24 months, total forfeitures, and reduction to pay grade E–1. On January 19, 1993, the convening authority approved the sentence as adjudged. On July 26, 1994, the Court of Military Review[2] set aside the findings of guilty of the involuntary manslaughter and assault charges, and dismissed those charges and specifications. That court reassessed the sentence and affirmed only so much of the sentence as provided for confinement and total forfeitures for 6 months, and reduction to Private E1. 40 MJ 914, 917, 919 (1994).

2. On October 25, 1994, this Court granted review on the following issue raised by appellate defense counsel:

WHETHER THE ARMY COURT OF MILITARY REVIEW ABUSED ITS DISCRETION IN REASSESSING RATHER THAN SETTING ASIDE THE SENTENCE AFTER SETTING ASIDE THE FINDINGS OF GUILTY AND DISMISSING CHARGES OF INVOLUNTARY MANSLAUGHTER AND ASSAULT BY INTENTIONAL INFLICTION OF GRIEVOUS BODILY HARM FOR SHOOTING INDISCRIMINATELY INTO A CROWD AND INJURING TWO INDIVIDUALS (TWO SPECIFICATIONS), LEAVING ONLY A CONVICTION FOR CARRYING A CONCEALED WEAPON.

We hold that the Court of Military Review did not err in reassessing appellant's sentence. *See United States v. Jones*, 39 MJ

315, 317 (CMA 1994); *United States v. Glazier*, 26 MJ 268, 271 (CMA 1988).

3. The facts, as found by the Court of Military Review, are as follows:

The evidence of record unequivocally establishes that, while attending a festival in Bremerhaven, Germany, on the evening of 18 May 1992, the appellant fired a nine-millimeter pistol into a group of young men of Turkish descent, wounding three of them, one fatally. The appellant's actions may have been spawned by another incident that had occurred at the festival the previous evening. At that time, a Turkish youth shot a friend of the appellant in the face with a gas pellet pistol. On the evening of the 18th, the appellant and three of his friends decided to attend the festival knowing there was a possibility they might again be confronted by Turkish youths hostile to American soldiers. When the friend who had been shot warned him about the Turks, the appellant said he was not concerned because he was carrying "a nine"—meaning a nine-millimeter pistol.

About thirty minutes after entering the festival grounds, the appellant and his friends were confronted by a group of about ten to fifteen Turkish youths. The Turks began taunting the appellant and the other soldiers with obscene words and gestures, and the soldiers reciprocated. When one of the antagonists, possibly one of the soldiers, said, "Four of you against four of us," the two groups left the festival grounds intent on engaging in a fist fight. However, the scenario did not play out as the soldiers expected it would.

According to the soldiers, when they left the festival grounds, more individuals joined the Turkish youths and, as their numbers increased, they became more aggressive and belligerent. One of them retrieved some empty bottles from a trash container, broke them, and began advancing on the soldiers. Another brandished a switchblade knife. Others threw bottles at the soldiers and shot at them with gas

---

1. The opinion below (40 MJ 914, 915 n. 1) incorrectly reflects a violation of Article 118 instead of 119.

2. *See* 41 MJ 213, 229 n. * (1994).

pellet guns. As the crowd continued to grow, the soldiers retreated but the Turks continued to advance upon them. The appellant, believing he was about to be surrounded, pulled his pistol from a leather purse and fired three shots into the air to warn them away. Apparently, this did not deter the Turks as they continued to pursue the soldiers who, by now, were hastening their retreat. As he was running away, the appellant pointed his pistol at the crowd and fired three more shots. This time he wounded three people.

Two of the Turkish youths told a different story. They testified that the soldiers initiated the confrontation and when they responded to their invitation to fight, the appellant pulled out a pistol and shot them without provocation. They denied throwing bottles at the soldiers or intending to assault them other than with their fists. They claimed that the soldiers threw bottles at them. According to the Turks, the large crowd that followed the soldiers only wanted to observe the impending fight, not menace the soldiers.

The appellant gave a sworn statement to military criminal investigators in which he admitted shooting into the crowd, but [said] that he did so to protect himself and his friends from the hostile mob. He told how he and his friends were first confronted by ten to fifteen Turkish youths and that they exchanged insults. He related that, after one of his friends made the offer to fight the Turks "four on four," they all left the festival grounds to engage in the fray. However, when the group of Turks swelled in size, the soldiers decided to break off the engagement. He described the crowd that followed as threatening and that he feared for his safety. He claimed that he "heard small pop sounds that reminded [him] of a .22 or maybe a .25 caliber pistol." He claimed to have seen a Turkish youth "standing with both his arms extended in front of his chest, hands together, like in a handgun shooting stance." He thought the Turk was aiming a pistol at him. As he was running away from the crowd, he fired "three rounds into the crowd, with my weapon in my right hand, pointed behind me as I ran away."

The soldiers' version of the incident was corroborated by neutral witnesses. They testified that the Turkish youths were hostile, armed with sticks, knives, gas pellet guns, and outnumbered the soldiers by as few as twenty to as many as two hundred to four. Several witnesses testified that, before the appellant fired his pistol, the soldiers were attempting to disengage themselves from the confrontation but were unsuccessful because the Turks continued to advance upon them. These witnesses also said that they saw or believed they saw the Turks shoot gas pellet pistols at the soldiers before the appellant shot at them. One witness said that when the appellant shot three rounds into the air it did not deter the Turks but only incited them to "storm" the soldiers. An American officer at the festival observed a group of Turkish youths beating an "African" prior to the incident. He believed they were looking for trouble and implied that they may also have been hostile to the appellant and his friends because of their African heritage. Subsequent to the incident, police investigators found three spend cartridges from a gas pellet gun at the scene.

40 MJ at 915–17 (footnote omitted).

— — —

4. The Court of Military Review, upon review of the record, concluded as a matter of fact, 40 MJ at 915, that appellant acted in self-defense in firing his pistol at the Turkish nationals. It set aside the findings of guilty of involuntary manslaughter and assault, 40 MJ at 917, dismissed those charges and specifications, and reassessed the sentence for the remaining conviction for carrying a concealed weapon, id. at 919. Appellant now asserts that the court below abused its discretion by reassessing the sentence instead of ordering a sentence rehearing by a court-martial. He argues that reassessment is inappropriate where the most serious charges against appellant are dismissed on appeal.

5.  A Court of Military Review, after setting aside findings of guilty of a court-martial, may reassess the sentence if it can determine that on the remaining findings "the accused's sentence would have been at least of a certain magnitude." *United States v. Jones,* 39 MJ at 317, *quoting United States v. Sales,* 22 MJ 305, 307 (CMA 1986). The court may not, however, impose a sentence higher than that which would have been adjudged by the sentencing authority on the remaining findings. 39 MJ at 317. If the court cannot be certain as to that, it must order a sentence rehearing. *United States v. Jones, supra; United States v. Peoples,* 29 MJ 426, 429 (CMA 1990).

6.  In *Peoples* the Court of Military Review dismissed a drug-offense charge and reassessed the sentence for the remaining failure-to-maintain-sufficient-funds conviction. The reassessed sentence, like the original sentence, included a bad-conduct discharge. We reversed, holding that the Court of Military Review could not determine whether the sentencing authority would have imposed a bad-conduct discharge if it had heard evidence only on the check offense. Similarly, in this case appellant argues that the Court of Military Review could not determine whether the sentencing authority would have imposed the reassessed sentence if it had heard evidence only on the concealed-weapon charge. Final Brief at 12–14.

7.  We note that in *United States v. Peoples,* 29 MJ at 427–28, this Court was concerned that the Court of Military Review's sentencing decision might have been influenced by information that the sentencing authority should not have had before it. *See also* United States v. Jones, supra; *United States v. Voorhees,* 4 USCMA 509, 531, 16 CMR 83, 105 (1954). That concern is not raised in this case. Evidence of the death and injuries giving rise to the dismissed involuntary-manslaughter and assault charges was admissible as aggravating evidence before the sentencing authority. It showed "circumstances directly relating to or resulting from the" conviction for carrying a concealed weapon. RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984. *See United States v. Glazier,* 26 MJ 268, 271 (CMA 1988); *United States v. Vickers,* 13 MJ 403, 406 (CMA 1982). *Cf. United States v. Rust,* 41 MJ 472, 478 ¶ 25, 27 (1995).

8.  The record clearly shows that the injury and death of the Turkish nationals was admissible evidence in sentencing for the concealed weapon charge. Appellant's statement that he had "a nine [millimeter pistol]" in response to an initial warning of possible aggression by the Turkish youths evidenced his motive to use the concealed weapon to forcibly extract himself and his fellow soldiers from a hostile situation. *See United States v. Martin,* 20 MJ 227, 232 (CMA 1985) (Everett, C. J., concurring in the result) (evidence of motive a relevant sentence concern), *cert. denied,* 479 U.S. 917, 107 S.Ct. 323, 93 L.Ed.2d 295 (1986). Moreover, evidence that appellant, once in the hostile situation, actually used the concealed weapon to injure and kill the Turkish nationals established a direct result of the charged conduct. *Cf. United States v. Rust, supra* ¶ 29 (resulting deaths only tenuously connected to accused's conduct). Therefore, we conclude that the Army Court's consideration of the consequences of carrying a concealed weapon was proper and did not preclude that court's reassessment of appellant's sentence.

9.  After "[r]eassessing the sentence on the basis of the error noted" and on the record as a whole, the Court of Military Review affirmed a sentence that reduced the confinement and total forfeitures from 24 months to 6 months. 40 MJ at 919. *See United States v. Jones* and *United States v. Sales, both supra.* ¶ 5. This sentence is well within the maximum punishment authorized for carrying a concealed weapon. Para. 112e, Part IV, Manual, *supra.* Moreover, the above-noted aggravation evidence provided that court with a reasonable basis for this

reassessment. We hold that the Court of Military Review did not abuse its discretion in reassessing the sentence rather than ordering a rehearing.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.