**UNITED STATES, Appellee,**

v.

**Staff Sergeant Ray T. LEAK, United States Army, Appellant.**

**ARMY 20000356.**

U.S. Army Court of Criminal Appeals.

23 July 2003.

For Appellant: Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Mary E. Card, JA (on brief); Colonel Robert D. Teetsel, JA.

For Appellee: Lieutenant Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Mark L. Johnson, JA; Captain Tami L. Dillahunt, JA (on brief).

Before HARVEY, Senior Judge, CLEVENGER, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

HARVEY, Senior Judge:

A panel of officer members sitting as a general court-martial convicted appellant, contrary to his pleas, of maltreatment (three specifications), rape, adultery (two specifications), indecent assault, indecent acts, and solicitation to commit adultery in violation of Articles 93, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 920, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for sixty-one months, forfeiture of $200 pay per month for sixty months, and reduction to Private E1. This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

We agree with appellant's first assignment of error that there is insufficient evidence of force for us to affirm appellant's guilt of rape on 12 September 1999. However, we will affirm a guilty finding of the lesser included offense of indecent assault because indecent assault does not include the same requirement of force as rape. We also hold that there is insufficient evidence to establish appellant's guilt of indecent acts on 21 September 1999 because of a lack of evidence that appellant's sexual intercourse with a military subordinate occurred in a public place. However, there is sufficient evidence to affirm the lesser included offense of conduct prejudicial to good order and discipline because of appellant's status as a noncommissioned officer. We will reassess the sentence in our decretal paragraph.

### FACTS

Specialist (SPC) M's testimony was the primary basis for appellant's conviction. The guilty findings related to three incidents of sexual activity between appellant and SPC

M during her attendance as a student at the thirty-day Primary Leadership Development Course (PLDC)[1] at the 7th Army Noncommissioned Officer (NCO) Academy in Grafenwoehr, Germany. At the time of her attendance, SPC M had been on active duty between four and five years. She was a single parent of a fifteen-month old son. Specialist M was 65 inches tall and weighed approximately 130 pounds, and appellant was 71 inches tall and weighed approximately 188 pounds. At the time of the offenses, appellant was a thirty-four-year-old Small Group Leader (SGL) at the NCO Academy. However, he was not a member of SPC M's platoon; he was not her SGL or instructor. He did not rate her. On all three occasions, while appellant and SPC M were wearing battle dress uniforms, appellant initiated sexual activity with SPC M in the third floor SGL office during breaks between SPC M's classes.

### 10 September Offenses

Before 10 September 1999, appellant went out of his way to engage SPC M in personal conversations. During this time period, SPC M complained to appellant that her roommate was spreading a rumor that she was fraternizing with another student. Specialist M asked for appellant's help with her roommate. Appellant responded that he could "get anyone kicked out" of PLDC, and SPC M assumed that appellant would have her roommate dismissed from the course. However, her roommate was not dismissed from the course.

Appellant used two offices at the NCO Academy, one located on the first floor and one on the third floor. The first time appellant asked SPC M to go to the third floor SGL office, she said "no." Later when he asked her to go there, she agreed because she did not "feel like [she] had a choice." Once in the third floor SGL office, appellant asked SPC M what her intentions were toward him. She asked what he meant; appel-

lant repeated the same question.[2] They went near a couch. He put his arms around her, pulled her close, and kissed her. She put her hands on his chest to "put space between [them]" and leaned back. Appellant then said he wanted to have sex with her. He held SPC M's wrist and started "groping" her and tried to undo her pants and belt buckle. Specialist M told him "no" and said, "I know you don't think you're going to get me that easily." She "wrestled" with appellant, preventing him from removing her trousers. This testimony was the basis for appellant's conviction of one specification each of maltreatment, indecent assault, and solicitation to commit adultery.

Appellant told SPC M that he wanted to masturbate before she left the room. He got some toilet paper and she sat on the couch. Appellant masturbated in front of her until he ejaculated. He cleaned himself with toilet paper and she left the room. She testified that she did not cry out during the incident because she was nervous. She was afraid to run for the door because she did not know what he would do. She did not report appellant's behavior because she was afraid that he might lie about her, causing her dismissal from PLDC.[3] Specialist M emphasized her responsibility to her infant son, stating, "I'm a single parent ... [and I] had to do what is best for both of us." Appellant was not charged with any specific offense for masturbating in SPC M's presence.

After this first incident on 10 September 1999, SPC M "acted like nothing happened" and "blew it off." She still smiled at appellant and was courteous to him.

### 12 September Offenses

Appellant asked SPC M to go to his third floor office two days later. They each went to his office separately. Specialist M went "because [she] thought [she] could talk [her way] out of it again." Appellant locked the door and left the key in the lock, precluding others who shared the office from entering

---

1. Successful completion of PLDC is a prerequisite for promotion to Sergeant.

2. At trial, no one asked SPC M, nor did she volunteer, what reply, if any, she made to appellant's question.

3. The NCO Academy Commandant testified that normally during their in-processing brief, PLDC students are told that the Commandant is the only person who can dismiss a student from the PLDC course.

during the sexual activity.[4] He said he "wanted [her]," but SPC M laughed and said, "I don't have time for this." He replied that she had twenty minutes between classes. Appellant grabbed SPC M and wrestled with her, trying to get her trousers down. She said "no" more than once. Appellant held one of her wrists and tried to unbuckle her trousers with his other hand.

As this was occurring, SPC M decided, " 'I'm not going to win this battle.' I was not going to try to fight him, so I let him have sex with me." She was surprised when appellant took a condom out of the desk. She noticed he had a box and a bag containing condoms. Specialist M accused appellant of "setting her up" and "bringing other females up there." He denied that he was setting her up and asserted "that he never did anything like that before." They engaged in sexual intercourse on the desk. He ejaculated, removed the condom, and wrapped it in a tissue. She pulled up her trousers, unlocked the door, and left.

Specialist M testified that she let appellant have sex with her because she was worried that appellant might dismiss her from PLDC for having a bad attitude given that she already had trouble with her roommate. Appellant was found guilty of one specification each of maltreatment, rape, and adultery for his conduct on 12 September 1999.

### 21 September Offenses

On the third occasion, appellant gave SPC M a key and asked her to meet him at the third floor SGL office after lunch. She asked him, "What happens if I get caught going up there?" Appellant responded, "I'll just tell them that I sent you up there for something." About an hour after receiving the key, SPC M went to the third floor office. She told appellant there was insufficient time for sexual activity, but he "begged" her to give him five minutes. She said "no" and they "wrestled as usual." He put on a condom and then had sexual intercourse with SPC M on the office couch. She was face down during the intercourse. Afterwards, appellant put the used condom into a tissue. Specialist M pulled up her trousers and ran

back to class where others noted her ebullient demeanor and her efforts to make the students laugh.

Specialist M testified that she did not do anything else to let appellant know that she did not want to have sex with him. At one point, she asked him whether he was forcing himself on her, and he said "no." Later, the following exchange occurred between SPC M and trial defense counsel:

Q. What was it that you were more scared of than having sex forced upon you again by the accused?

SPC M. I was afraid of not graduating [from] the class and not being successful, and that's—I mean this is all I have to take care of my son. The Army is all I have.

The members found appellant not guilty of rape for the sexual intercourse on 21 September 1999, but guilty of the lesser included offense of indecent acts, and guilty of one specification each of maltreatment and adultery.

### Report of the Offenses

Specialist M testified that she initially complained to one of her SGLs, Staff Sergeant (SSG) W, about appellant sexually harassing her. However, SSG W denied that SPC M ever complained about appellant's sexual harassment. NCO Academy students submitted end-of-course written critiques indicating there were problems with favoritism and sexual advances directed toward female students. Investigators consequently questioned SPC M about her relationship with appellant. Initially, SPC M only told investigators that appellant sexually harassed her. She did not disclose appellant's masturbation or the incidents of sexual intercourse. During the second interview, after an investigator insisted that he knew about her sexual involvement with appellant, she provided information about the three sexual incidents.

### Constructive Force Instruction

Trial counsel emphasized in his argument: (1) SPC M was feeling stress about completing PLDC because she was "a young woman without a fallback, responsible for a [fifteen]-

---

4. Four other SGLs and the unit first sergeant had keys to the third floor SGL office.

month-old child and the Army" was all she had; (2) appellant had "an unusual position of power over her in the PLDC environment"; and (3) appellant gave her special attention, thereby "creat[ing] the environment or the force that overpowered her will and made her feel that under the whole of the circumstances it was futile to resist." As to her decision to have intercourse with appellant the first time, trial counsel argued that SPC M was thinking, as follows:

> "[I]t is just futile to resist. I mean what is he going to do? Is he going to beat me up [5] or is he just going to get me thrown out? I don't know, but it's futile to resist. If I call out, I have no proof. He's an SGL. They're going to believe him." And so, because it's futile to resist, she lets the sex happen. She doesn't have a choice. She's indicated she doesn't consent and he just takes her anyway.

Without defense objection, the military judge twice explained the interrelationship between force and consent:

> Both force and lack of consent are necessary to the offense. In the law of rape, various types of conduct are sufficient to constitute force. The most obvious type is actual physical force, that is, the application of physical violence or power, which is used to overcome or prevent active resistance. Actual physical force, however, is not the only way force can be established. Where intimidation makes resistance fu-

tile, it is said that constructive force has been applied, thus satisfying the requirement of force. Hence, when the accused's actions and words, coupled with the surrounding circumstances, create a reasonable belief in the victim's mind that death or physical injury would be inflicted on her and that further resistance would be futile, the act of sexual intercourse has been accomplished by force.[6]

If the alleged victim consents to the act of sexual intercourse, it is not rape. The lack of consent required, however, is more than mere lack of acquiescence. If a person, who is in possession of her mental and physical faculties, fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she consented. Consent, however, may not be inferred if resistance would have been futile under the totality of the circumstances, or where resistance is overcome by a reasonable fear of death or great bodily harm, or where she is unable to resist because of the lack of mental or physical faculties. You must consider all the surrounding circumstances in deciding whether Specialist [M] consented. If Specialist [M] submitted to the act of sexual intercourse because resistance would have been futile under the totality of the circumstances, sexual intercourse was done without consent.[7]

---

5. SPC M never testified that she was concerned about being "beat up." Defense counsel, however, did not object to trial counsel's argument.

6. Our superior court has explained, "Physical contact, however, is not the only way force can be established. Where intimidation or threats of death or physical injury make resistance futile, it is said that 'constructive force' has been applied, satisfying this element." *United States v. Palmer*, 33 M.J. 7, 9 (C.M.A.1991); *see also United States v. Simpson*, 58 M.J. 368, 378–79 (C.A.A.F.2003) (stating, "With respect to the use of constructive force to prove the element of force, however, we have held that it is sufficient if the Government proves that the abuse of authority placed the victim in fear of physical injury," rather than *great bodily harm*).

7. The military judge provided a standard instruction known as, "Constructive force—abuse of military power," from Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook

[hereinafter Benchbook], para. 3–45–1 n.6 (30 Sept. 1996) (unchanged in current 15 September 2002 edition). We suggest replacing the existing sentence in the Benchbook, "Where intimidation or threats of death or physical injury make resistance futile, it is said 'constructive force' has been applied, thus satisfying the requirement of force," with the following passage, "Where intimidation makes resistance futile, there is no requirement for physical contact, or threats of death, or great bodily harm. It is said that constructive force has been applied, thus satisfying the requirement of force." *See Simpson*, 58 M.J. at 379; *Palmer*, 33 M.J. at 9. "Intimidation" means to "coerce or inhibit by or as if by threats." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 945 (3d ed.1996).

In any event, we are satisfied that the military judge did not abuse her discretion by giving this constructive force instruction because it was warranted by the evidence. *See United States v. Brown*, 50 M.J. 262, 266 (C.A.A.F.1999). Al-

There is evidence which, if believed, indicates that the accused used his military position, or rank, or authority in order to coerce or force Specialist [M] to have sexual intercourse.

Specifically, I draw your attention to the testimony regarding the position a small group leader has in PLDC. You may consider this evidence in deciding whether Specialist [M] had a reasonable belief that death or great bodily harm would be inflicted on her and that resistance would be futile. This evidence is also part of the surrounding circumstances you may consider in deciding whether Specialist [M] consented to the act of sexual intercourse.

After deliberating for two hours, the court was reopened and the members asked for additional information regarding the concept of constructive force. In the absence of members, the parties discussed clarifying instructions. With defense concurrence, the military judge repeated for the panel the same definition of constructive force that was previously given. The military judge elaborated on the instruction, stating, "So if there was this intimidating atmosphere and if the victim felt that death or physical injury would be inflicted on her anyway, then we kind of drop down the level of resistance that we normally expect someone to exercise." As a result of the panel president's request for further explanation of the terms, "great bodily harm" and "physical injury," the following exchange occurred:

MJ: I think the requirement is only for physical injury. So to the extent—I think, it's further down.[8] It's death or physical injury.

Major [N]: Can you help us maybe understand physical injury a little bit more?

MJ: Well, I guess I would answer that by saying physical injury is some injury to the person. I mean, not just a mental kind of thing, not a stressful—just a stress or mental trauma, it would be some physical injury to the body. But I don't believe—but it would not necessarily have to be to the individual. It could be to a third party, too. But remember, the belief has to be reasonable.

Trial defense counsel did not object to these clarifying instructions.

## ANALYSIS

This court's duty is to determine both the factual and legal sufficiency of the evidence used to convict an appellant. *See* UCMJ art. 66(c). The standard of review for legal sufficiency is whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On the other hand, when testing for factual sufficiency, this court must, after weighing the evidence and making allowances for not having seen the witnesses in person, be convinced, itself, that an accused is guilty beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987); *see also United States v. Washington*, 57 M.J. 394, 399–400 (C.A.A.F.2002); *United States v. Scott*, 40 M.J. 914, 917 (A.C.M.R.1994), *aff'd*, 42 M.J. 457 (C.A.A.F.1995). We are cognizant that we do not have, as the members did at trial, the opportunity to observe SPC M's demeanor as she testified and to assess her tone and the emphasis that she placed on appellant's words and actions as she described them to the members.

### Rape on 12 September

Rape has two elements: (1) an act of sexual intercourse; (2) done by force and without the consent of the victim. UCMJ art. 120(a); *see also United States v. Webster*, 40 M.J. 384, 387 (C.M.A.1994) (affirming rape where

---

though there is no direct evidence of any overtly threatening language directed toward SPC M, a threat may be fairly implied by the tone of voice in which a statement is made, or the circumstances under which a statement is delivered. Appellant's statement to SPC M that he had the authority to dismiss PLDC students, taken in the context in which it was delivered, raised the issue of an attempt to intimidate SPC M into

acquiescing to his advances. Whether words and actions amount to intimidation is determined by the totality of the surrounding circumstances. *See Simpson*, 58 M.J. at 378–79.

8. The military judge provided her instructions to the members both verbally and in writing, and was apparently referring to those written instructions in this instance.

appellant "restrained [victim] by grabbing her arms, backed her up against the kitchen counter, and prevented her from moving" while victim repeatedly insisted that appellant leave and repeatedly said "no"). The *Manual for Courts–Martial* explains the interrelationship between force and lack of consent:

> Force and lack of consent are necessary to the offense. Thus, if the victim consents to the act, it is not rape. The lack of consent required, however, is more than mere lack of acquiescence. If a victim in possession of his or her mental faculties fails to make lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that the victim did consent. Consent, however, may not be inferred if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the victim is unable to resist because of the lack of mental or physical faculties. In such a case there is no consent and the force involved in penetration will suffice. All the surrounding circumstances are to be considered in determining whether a victim gave consent, or whether he or she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm.

*Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM*, 2000], Part IV, para. 45c(1)(b).[9]

■ Under the constructive force doctrine, if resistance would have been futile, there is no requirement to prove that such resistance be overcome by threats of death or great bodily harm. *See United States v. Clark*, 35 M.J. 432, 434 (C.M.A.1992) (affirm-

ing NCO's rape conviction despite lack of physical force and threats where victim was a basic trainee under accused's supervision, weighed ninety pounds less than accused, and sexual intercourse occurred inside a dark shed). The victim can manifest lack of consent in many ways and proof is not required that the victim "physically resisted her attacker." *United States v. Cauley*, 45 M.J. 353, 356 (C.A.A.F.1996); *see also United States v. Williamson*, 24 M.J. 32, 33–34 (C.M.A.1987) (affirming rape where victim eventually acquiesced because appellant with superior strength grabbed her in a deserted rural area, "forced her to the snow-covered ground," and had sexual intercourse with her, despite victim's repeated statements of "no"). Indeed, our superior court has held that "military relationship[s] ... create[ ] a unique situation of dominance and control where explicit threats and display of force by the military superior [are] not necessary" for rape. *United States v. Bradley*, 28 M.J. 197, 200 (C.M.A.1989) (affirming drill sergeant's conviction for rape of youthful bride of recent recruit under direct supervision of accused where accused threatened to imprison victim's husband and "engaged in bizarre conduct" that indicated his "power and control").

■ Appellant's factual insufficiency arguments compel us to examine the circumstances surrounding the acts of sexual intercourse, focusing on SPC M's credibility, appellant's use of force, and her level of resistance.[10] These factors are factually and legally interrelated, as we measure force and resistance. We are cognizant that, unlike the court members, we do not have the opportunity to assess SPC M's demeanor. Like the court members, however, we find SPC M's testimony to be credible with re-

---

9. All *MCM* provisions cited in this decision are unchanged in the current *MCM*, 2002.

10. We do not find that mistake of fact was reasonably raised by the evidence. Appellant did not testify at his trial. Trial defense counsel argued on the merits that SPC M was not credible and sexual activity was not proven. As such, trial defense counsel specifically waived any mistake of fact instruction. Further, appellate defense counsel has made no assertions of error with respect to the mistake of fact defense. In light of trial defense counsel's specific waiver of

the mistake of fact instruction, we conclude that no such instruction was required. *See United States v. Hibbard*, 58 M.J. 71, 76–77 (C.A.A.F. 2003) (mistake of fact not raised by evidence where defense argued sexual activity never occurred); *United States v. Brown*, 43 M.J. 187, 190 n. 3 (C.A.A.F.1995) (stating that trial judges should "INSTRUCT ON REASONABLE AND HONEST MISTAKE IN ALL RAPE CASES INVOLVING CONSENT UNLESS THE DEFENSE COUNSEL AGREES THAT THE DEFENSE IS NOT RAISED" (emphasis in original)).

spect to her unrebutted descriptions of her initial physical and oral manifestations of resistance and the eventual occurrence of the sexual activity with appellant. We have considered the totality of the circumstances, including appellant and SPC M's conduct throughout September 1999, in reaching this conclusion.

While attending PLDC, SPC M, who had been on active duty between four and five years, had full possession of her mental and physical faculties. On 10 September, when appellant kissed her, she made her lack of consent reasonably clear by leaning back away from him. When he asked her for sex and tried to unbutton her trousers, SPC M struggled and said "no." *See United States v. Carr*, 18 M.J. 297, 302 (C.M.A.1984) (remarking that it is unreasonable to disregard victim's "no"). Appellant terminated his attempt to have sexual intercourse with SPC M and instead asked her to watch him masturbate. She nonverbally showed her acquiescence by seating herself on the couch. He then masturbated in her presence.

On 12 September, SPC M again initially resisted appellant's sexual advances. She wrestled with him and told him "no." Appellant was unable to undo her trousers and belt. Appellant never threatened bodily harm to SPC M, nor did he expressly threaten her military career. Specialist M did not have *a reasonable fear of death or grievous bodily injury*,[11] nor did she have a reason-

able basis for her conclusion that *resistance would be futile*. When she saw multiple condoms in his office, she was not too intimidated to challenge his intentions toward other women. As such, we find that SPC M "ceased to resist" and then engaged in sexual intercourse with appellant.[12] *See United States v. Tollinchi*, 54 M.J. 80, 82–83 (C.A.A.F.2000) (holding successful resistance by intoxicated seventeen-year-old victim to oral sodomy, followed by lack of resistance to intercourse, rendered rape conviction legally insufficient). We may infer consent with respect to a rape charge unless SPC M made her " 'lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances.' " *Id.* at 82 (quoting *MCM*, 1995, Part IV, para. 45c(1)(b)); *see Bonano–Torres*, 31 M.J. at 178 (" *'While resistance is tangentially probative of the issues of consent and mistake of fact, proof of resistance is central to finding the element of force.'* " (alteration in original) (citation omitted)).

We also weigh the subsequent consensual sexual intercourse between SPC M and appellant on 21 September in our factual sufficiency determination. Establishing intent is a proper purpose for considering such extrinsic-acts evidence. *See* Military Rule of Evidence 404(b). Specialist M and appellant's intentions were clearly in issue on 12 September. Their consensual sexual intercourse on 21 September made it more probable that appellant's prior conduct on 12 September

11. Specialist M emphasized that the primary reason she did not resist sexual intercourse with appellant was her belief that he would cause her to be dismissed from PLDC. This belief was not objectively reasonable because: (1) appellant never threatened to dismiss SPC M from PLDC; (2) appellant was not in SPC M's rating or supervisory chain; (3) such authority was reserved to the PLDC Commandant; (4) SPC M had sufficient military and personal experience to be well aware of the limitations of appellant's military authority; and, (5) there was no evidence that action was initiated to dismiss SPC M's roommate from PLDC in response to SPC M's request that appellant take action against her roommate. In any event, SPC M's belief that appellant might cause her dismissal from PLDC does not equate to a *reasonable fear of death or grievous bodily injury*.

12. We give little weight in our factual sufficiency analysis to SPC M's failure to shout for help, and

to her initial failure to voluntarily and accurately report the offenses. There was no testimony about whether others were in the vicinity of the office during the sexual activity, and the law does not require that a victim call for help or make a timely and complete report of an offense. Rather, these are only two of many possible factors under the totality of the circumstances that we consider in determining whether an alleged victim has consented to intercourse. *See United States v. Bonano–Torres*, 31 M.J. 175, 178–79 (C.M.A.1990); *Simpson*, 58 M.J. at 377 (listing seven factors "demonstrating the relationship between the offenses at issue and Appellant's superior rank and position"); *United States v. Stanley*, 43 M.J. 671, 675 (Army Ct.Crim.App.1995) (holding sexual intercourse was forced under totality of circumstances, even though victim did not request help from person who telephoned her during the sexual assault).

was not forcible. *See United States v. Dorsey*, 38 M.J. 244, 247 (C.M.A.1993) (subsequent conduct admitted on the intent issue); *United States v. Levitt*, 35 M.J. 114 (C.M.A. 1992) (same). " 'Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.' " *United States v. Tanksley*, 54 M.J. 169, 176 (C.A.A.F.2000) (quoting *Huddleston ·v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). After consideration of appellant and SPC M's conduct throughout September 1999, we are not convinced beyond a reasonable doubt that the sexual intercourse on 12 September was done by force and without SPC M's consent. *See MCM*, 2000, Part IV, para. 45c(1)(b); *United States v. Pierce*, 40 M.J. 601, 604, 606 (A.C.M.R.1994) (rape legally, but not factually sufficient); *United States v. King*, 32 M.J. 558, 563–64 (A.C.M.R.1991) (rape not factually sufficient).

### Indecent Assault on 12 September

■ Next, we must determine whether there is sufficient evidence to affirm the lesser included offense of indecent assault. Proof of indecent assault includes a requirement that " 'bodily harm ... must be done ... without the lawful consent of the person affected.' Bodily harm is defined as 'any offensive touching of another, however slight.' " *United States v. Johnson*, 54 M.J. 67, 69 (C.A.A.F.2000) (quoting *MCM*, 1995, Part IV, para. 54c(1)(a)). Appellant need not have touched SPC M's skin to commit an indecent assault. *See Bonano–Torres,·* 31 M.J. at 180 (touching of woman's blouse, but not her person or body, was sufficient to constitute assault). The government bears

the burden of establishing lack of consent. *Johnson*, 54 M.J. at 69 n. 3. We conclude that after SPC M told appellant "no," he "wrestled" with her and tried to undo her trousers—establishing her lack of consent. *See United States v. Jackson*, 25 M.J. 711, 712 (A.C.M.R.1987) (affirming NCO's indecent assault conviction where victim's evasive actions to her platoon sergeant's advances established lack of consent, noting that appellant was much larger than victim); *United States v. McFarlin*, 19 M.J. 790, 794 (A.C.M.R.1985) ("The victim's lack of verbal or physical response to most of appellant's acts is most reasonably attributable to passive acquiescence prompted by appellant's superior rank and position rather than to the victim's consent.").

Appellant did "bodily harm" to SPC M in that his actions were an " '*offensive touching* of another, however slight.' " *United States v. Watson*, 31 M.J. 49, 53 (C.M.A.1990) (quoting *MCM*, 1984, Part IV, para. 54c(1)(a)) (alteration in original). Grabbing SPC M and attempting to unbutton her trousers was "without her consent and with intent to gratify [appellant's] sexual desires." [13·] *Id.* Under the circumstances of this case, we are satisfied beyond a reasonable doubt of appellant's guilt of indecent assault on 12 September 1999, and will affirm this lesser included offense in our decretal paragraph.[14]

### Indecent Acts on 21 September

■ Appellant was also charged with rape as a result of the sexual intercourse that occurred on 21 September 1999. The military judge instructed the members that rape requires as an essential element that "the sexual intercourse was done by force and without SPC [M's] consent, whereas the lesser offense of indecent acts with another does not include that element." The military

---

**13.** There is a distinct legal and factual difference between an offensive touching necessary for a battery and indecent assault, and the degree of force or threat of force and lack of consent necessary for rape. In the law of rape, "where there is no manifestation of lack of consent, an inference *may* be drawn that the victim consented." *Watson*, 31 M.J. at 52–53. However, in indecent assault there is no such permissive inference of the victim's consent.

**14.** We also recognize that appellant's subsequent sexual intercourse with SPC M violated Article

134, UCMJ. It "involve[d] an improper superior-subordinate relationship which detracts from the authority of the superior, and thereby adversely affects good order and discipline." *United States v. March*, 32 M.J. 740, 742 (A.C.M.R. 1991) (en banc); *see also United States v. Fuller*, 54 M.J. 107, 112 (C.A.A.F.2000) (holding NCO's invitation to another for sex with a private first class from the NCO's training unit was not maltreatment, but affirming the lesser included offense of simple disorder in violation of Article 134, UCMJ).

judge did not instruct the members that if they found appellant's sexual activity with SPC M to be consensual, they must also find that appellant's sexual conduct was open and notorious in order to find him guilty of indecent acts,[15] nor did she advise them of any other lesser included offenses.

Appellant was found guilty of indecent acts. Private heterosexual intercourse between consenting adults is not intrinsically indecent.[16] *See United States v. Hullett*, 40 M.J. 189, 191 (C.M.A.1994); *United States v. Hickson*, 22 M.J. 146, 148–50 (C.M.A.1986) (discussing history of military adultery and fornication prosecutions and stating private sexual intercourse between unmarried persons is not punishable), *overruled in part on other grounds by United States v. Hill*, 48 M.J. 352 (C.A.A.F.1997) (summary disposition); *United States v. Snyder*, 1 U.S.C.M.A. 423, 427, 4 C.M.R. 15, 18, 1952 WL 2675 (1952) (holding Article 134, UCMJ, not intended to set standard for private conduct). Under these circumstances, we find that appellant's consensual sexual intercourse with SPC M on 21 September 1999 was not open and notorious and thus it was not "indecent." *See Sims*, 57 M.J. at 422; *Izquierdo*, 51 M.J. at 423.

Our conclusion regarding the legal insufficiency of the evidence of indecent acts does not end our analysis. Appellant's conduct on 21 September 1999 concerned sexual activity of an NCO cadre with an enlisted soldier in training. Accordingly, we will affirm a simple disorder under Article 134, UCMJ, in our decretal paragraph. *See Fuller*, 54 M.J. at 112; *March*, 32 M.J. at 742.

## DECISION

We have considered appellant's other assignments of error and the matters appellant has asserted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The court affirms only so much of the finding of guilty of Specification 1 of Charge II as finds that appellant did, at or near Grafenwoehr, Germany, on or about 12 September 1999, commit an indecent assault upon Specialist M, a person not his wife by grabbing her person and attempting to unbutton her trousers, with intent to gratify his sexual desires, in violation of Article 134, UCMJ. The court affirms only so much of the finding of guilty of Specification 2 of Charge II as finds that appellant, a small group leader and instructor at the Primary Leadership Development Course, did, at or near Grafenwoehr, Germany, at an office at the Noncommissioned Officer Academy, on or about 21 September 1999, during a break between classes, engage in an improper sexual relationship with Specialist M, a student in the Primary Leadership Development Course, a person not his wife, by wrestling with her as he attempted to undo her trousers and then engaging in sexual intercourse with her, with intent to gratify his sexual desires, which conduct was of a nature to bring discredit upon the armed forces and was to the prejudice of good order and discipline in the armed services, in violation of Article 134, UCMJ. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for three years, forfeiture of $200 pay per month for three years, and reduction to Private E1.

Judge CLEVENGER and Judge SCHENCK concur.

---

15. "[S]exual acts are open and notorious when committed 'in such a place and under such circumstances that it is reasonably likely to be seen by others even though others actually do not view the acts.'" *United States v. Sims*, 57 M.J. 419, 421 (C.A.A.F.2002) (quoting *United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F.1999)).

16. *See id.* at 422 (holding sexual conduct in bedroom behind unlocked door was not public and

therefore not indecent); *Izquierdo*, 51 M.J. at 422–23 (stating "fornication, when committed 'openly and notoriously,' is an 'aggravating circumstance[] sufficient to state an offense under Article 134,'" (citation omitted), and holding sexual intercourse behind the closed door of a barracks room with no third party present is insufficient to establish an indecent act).